## WILLIAM L. HALSTEAD v. THE MINNESOTA TRIBUNE COMPANY.[1]

December 10, 1920.

No. 21, 952.

**Contract of employment—offer and acceptance—copy of telegram.**

1. Sufficient foundation was laid for the reception of a copy of a telegram sent by defendant, accepting plaintiff's written proposition to become the manager of the Minneapolis Tribune, defendant's publication, for the period of three years, and the genuineness and authenticity of such copy, being the message delivered to plaintiff, was so conclusively proven that the court was warranted in charging the jury, that a valid three year contract was made.

**Statute of frauds—contract of employment.**

2. The separate writings received in evidence in terms connect each with the other so as to form a valid contract complying with the requirements of the statute of frauds.

Action in the district court for Hennepin county to recover $8,666.67 for breach of contract of employment. The case was tried before Molyneux, J., who when plaintiff rested denied defendant's motion for a directed verdict on the ground that the record wholly failed to establish the contract, and a jury which returned a verdict for $8,290. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Brown & Guesmer, Harry S. Carson, Edwin C. Brown* and *Stanley S. Gillam,* for appellant.

*Lancaster, Simpson, Junell & Dorsey* and *Robert Driscoll,* for respondent.

[1]Reported in 180 N. W. 556.

HOLT, J.

Action by a servant for breach of a contract of employment. Verdict against the master, and an appeal from the order denying a motion for judgment notwithstanding the verdict or a new trial.

Unless there was a valid contract of hiring for three years, there could be no recovery. The court instructed the jury that such a contract was conclusively proven. The correctness of this instruction is the only question in the case.

Plaintiff, a person of extensive experience in the newspaper business, applied to W. J. Murphy, the sole owner of the defendant, the publisher of the Minneapolis Tribune, for the position of manager. After several days' conference at Minneapolis, plaintiff, on leaving for Montreal, submitted Exhibit J, a written proposition signed by him, dated March 27, 1915, and addressed to W. J. Murphy, Publisher of Minneapolis Tribune. The material part is as follows:

"I will accept the employment, with the title of general manager, for a period of three years, at a salary of $150.00 per week the first year, $175 per week the second year, and $200 per week the third year, both of us having the right to cancel the agreement, without prejudice, at the end of one year upon sixty days' notice. It is to be understood that this arrangement contemplates a permanent and continuous connection beyond the period specified, if mutually agreeable, and that subsequent terms are to be commensurate with the importance of the position and the value of my services to the business. I would expect, which I think is customary in such cases, to be reimbursed for the cost of transporting my household goods from Atlanta to Minneapolis. Both my family and myself will be better contented in our own home than living transiently. If this is acceptable I should like to report on or about May 1st, as I will need the intervening period to be properly released from my present work, and I should like to attend the publishers' meeting in New York the last of April. While I expect to accept the position I should like to have the refusal of it for say ten days as a courtesy to my present employer, and to review the whole matter finally with my wife."

Plaintiff arrived at Montreal, and, after consulting with his wife and his then employer, sent Mr. Murphy the night telegram, Exhibit K, reading:

"Montreal, Que., Mar. 30, 1915.

Mr. W. J. Murphy,
 Publisher The Minneapolis Tribune, Minneapolis, Minn.
  (Personal.)

Mrs. Halstead gives cheerful consent and Sir Hugh Graham releases me with more reluctance than I anticipated however consequent you may consider this as my final acceptance of the position as outlined in my letter of March 27. Please confirm.

W. L. Halstead."

Plaintiff testified that the next day, Exhibit L, a telegram, was delivered to him, reading:

"Bn. Minneapolis, Minn. Mar. 31-15.

Mr. F. L. Halstead, The Montreal Star, Montreal, Que.

Your night letter received and I am please[d] with your quick decision write me occasionally and keep me advised of your movements will have associated press proxy made out and sent to you.

"W. J. Murphy,
Publisher The Minneapolis Tribune."

The next day plaintiff wrote and mailed, with inclosures, Exhibit M, the here material parts which read:

"Montreal, April 1st, 1915.

Mr. W. J. Murphy, Publisher.
 The Minneapolis Tribune,
  Minneapolis, Minn.

Dear Mr. Murphy:

I am in receipt of your telegram of March 31st, confirming finally my engagement. Mrs. Halstead is very much pleased with the prospect of living in Minneapolis and of being settled permanently again. * * * Sir Hugh Graham was more reluctant to release me than I anticipated. * * * I will advise you of my itinerary from time to time. I will be

here until April 17th or 18th. I will give you my New York address later. * * * I will be very glad indeed to have the Associated Press proxy.

Very sincerely,

W. L. Halstead."

Exhibit O, a letter mailed to plaintiff, is as follows:

"April 7, 1915.

Mr. Halstead,

287 St. Joseph Boulevard West,

Montreal, Quebec.

My dear Mr. Halstead:

Your letter of April 1st received. I have read the inclosures with interest, although I have not had time to make a careful study of them. I will preserve them carefully as you suggested. * * * I am glad to learn that Mrs. Halstead is pleased to take up what we will hope will be a permanent home in Minneapolis. I will send you the Associated Press proxy in due time.

Respectfully,

W. J. Murphy."

The proxy with dinner ticket was duly mailed to plaintiff. Subsequent correspondence indicates an employment of plaintiff by defendant. After plaintiff's arrival, the transportation expenses of his household goods were paid by defendant upon Murphy's written direction. And by like directions plaintiff was designated as manager and entered upon defendant's payroll at the salary stated in Exhibit J, and likewise salary increases, corresponding with the sums named in said exhibit, were fixed at the beginning of the second and third year by Murphy.

Appellant's contentions are mainly two: First, no written acceptance of the proposition, Exhibit J, by Murphy was proven in that Exhibit L was not authenticated and was not admissible; second, even if ruled admissible, the letters and telegrams fail to satisfy the requirements of the statute of frauds and do not prove a valid three-year employment.

No question is made but that each of the above exhibits signed by plaintiff was received by Murphy and that each purporting to be signed by Murphy was signed by him sent to and received by plaintiff, except

Exhibit L. But as to that exhibit, defendant strenuously maintains that there is no competent proof that it was sent by Murphy, and, in any event, its authenticity was a question for the jury. It is said that this court in Ikenberry v. New York Life Ins. Co. 134 Minn. 432, 159 N. W. 955, held that a telegram will not authenticate itself even though it be a requested reply message. Whether a foundation has been sufficiently laid for the admission in evidence of a writing is for the trial court. In the Ikenberry case there was evidence strongly tending to show physical and mental inability of the purported sender to compose or cause a telegram to be sent. In that situation the court properly required some corroboration of the authenticity of the telegram other than that it was received in reply to a prior message. A reply telegram received by the addressee may be differentiated from the status of a reply letter. In the case of the former the message received is not the original, written and signed by the sender. It is merely a copy or transcription thereof, having nothing in the way of handwriting or signature to identify the sender. Howley v. Whipple, 48 N. H. 487. However, it may be said that the use of the telegraph in business dealings is so common that a too rigid rule for the introduction of such messages in evidence cannot be adopted. Whether a foundation for reception of the message offered has been laid depends on the facts of each particular case. Western Twine Co. v. Wright, 11 S. D. 521, 78 N. W. 942, 44 L.R.A. 438, held: "A telegram received in reply to a telegram addressed to the sender is presumed to be genuine, in the absence of fraud, and is admissible, without further proof of identity of the sender."

But in the instant case the trial court insisted on a foundation that we think satisfies even appellant's interpretation of the Ikenberry case. Plaintiff was required to prove that the original could not be produced, and then that the message delivered, Exhibit L, was beyond all doubt authentic and the best evidence extant of the contents of the original. This was fully done before Exhibit L was received. It was shown that the telegraph company at Minneapolis, in the usual course of its business, destroys all messages delivered to it for transmission after the lapse of six months. When this cause of action accrued, more than two

years had expired since Murphy gave the original of Exhibit L to the telegraph company to transmit. It was not necessary to produce testimony from the Montreal office to show that the message taken from the wire corresponded to Exhibit L. Plaintiff testified to the receipt of the exhibit from a telegraph messenger at the place where his previous message to Murphy called for a reply, and also that it was the only message received that day purporting to come from Murphy. Even then the court refused to receive it until after all the subsequent correspondence between Murphy and plaintiff had been introduced together with testimony of the actual working relations between the parties covering the period of over two years while plaintiff occupied the position of manager of the Minneapolis Tribune. Exhibit M, admittedly received by Murphy from plaintiff, recites the receipt of a telegram of March 31, confirming plaintiff's engagement. Instead of repudiating such telegram, Murphy's subsequent letters and conduct conclusively prove and authenticate Exhibit L as the best evidence now in existence of Murphy's acceptance of plaintiff's written proposal for a three year engagement. Murphy's authority to bind defendant is conceded. There was no attempt to impeach or cast suspicion upon Exhibit L. No jury could be permitted on this record to find it spurious, or other than an exact copy of the message Murphy wrote and signed and directed the telegraph company to transmit as an answer to Exhibits J and K.

Defendant invokes the rule that, where it is sought to make out a contract by resorting to two or more separate writings, the connection must appear from the writings themselves, without aid of extrinsic evidence. It is submitted, without further comment, that the writings herein, from Exhibits J to O inclusive, in terms refer the one to the other so that by a mere reading of them the conclusion is unavoidable that those writings, and those alone, constitute the contract of employment. The contract, in that form, satisfies the statute of frauds, and the court correctly construed it as a valid employment of plaintiff by defendant for the period of three years.

The conclusion arrived at, as to what the competent evidence conclusively shows, renders it unnecessary to refer to or discuss the many authorities cited by the parties.

The order is affirmed.