## HERBERT T. LUNDGREN AND ANOTHER v. UNION INDEMNITY COMPANY AND OTHERS.[1]

April 14, 1927.

No. 25,932.

**Authentication of telegrams.**

1. Telegrams, no more than any other documents, can be admitted in evidence without authentication. But a telegram is sufficiently authenticated, prima facie, when, from its contents and other circumstances in evidence, it can be reasonably inferred that the author of the message is the person sought to be charged or another lawfully acting for him.

**Application of rule to case where stronger evidence seemed easily available.**

2. What is sufficient authentication of documentary evidence is largely a matter of discretion with the trial court. Rule applied where, although the documents might have been considered authentic, prima facie, additional and more convincing evidence of genuineness seemed easily available.

Evidence, 22 C. J. p. 906 n. 76, 77; p. 907 n. 78, 81, 82; p. 908 n. 83, 94; p. 909 n. 96.

---

See 10 R. C. L. 1151.

Appeal by the defendant surety company from an order of the district court for St. Louis county, Kenny, J., denying its motion for a new trial. Affirmed.

*Herbert T. Park*, for appellant.

*David J. Erickson*, for respondents.

[1] Reported in 213 N. W. 553.

STONE, J.

Action upon a contractors' bond wherein defendants Carlstad were the principals and defendant Union Indemnity Company the surety. After trial without a jury and a decision for plaintiffs, defendant surety appeals from an order denying its motion for a new trial. The assignments of error all go to the exclusion of certain telegrams and a letter, all sent from Duluth to the home office of the surety at New Orleans, supposedly by plaintiffs. They were offered by the surety in support of the claim that it was induced to execute the bond by false representations on the part of plaintiffs. Without the exhibits so offered it has no defense.

Plaintiffs were copartners at Duluth under the firm name of Western Realty Company. As such they were agents there for the casualty department of the Union Indemnity Company. Wheeler & Merritt were agents for the bond department. The bond in suit runs to plaintiffs as individuals and not as copartners. The three telegrams were signed Western Realty Co., nothing more. The letter bears the same subscription "by R. T. Lundberg." The bond was executed January 30, 1925, pursuant to a formal application. The first telegram of January 22, 1925, read in part: "Re-Bond Carlstad Brothers to Lundgren and Carlson. * * * Are mailing statement and application and copy contract." The next wire, of January 24, was this: "Write us about Carlstad bond. Very important." The final message, of January 27, said: "Carlstad bond, assets three hundred seventy thousand dollars. Liabilities one hundred fifty-seven thousand. Statement mailed. Wire." The letter, signed "by R. T. Lundberg," dated January 27, reads: "Re-Bond Carlstad Brothers to Western Realty Co. Enclosed herewith find financial statement for Carlstad Brothers which we stated in our telegram that we were sending you."

The statement in the last telegram of the assets and liabilities of Carlstad Brothers indicated a net worth of $213,000. That and one in the first message saying "Aetna willing to write" the bond are claimed to have been false. If not then insolvent, the firm was on the way for it soon became bankrupt. The bond, we take it, was

written before the financial statement, accompanying the letter of January 27, was received and on the faith of the application and telegrams. The only foundation laid for the introduction of these exhibits or any of them, aside from their own contents, was testimony that they had been duly received by the surety at New Orleans. The application and financial statement are not printed and the originals have not been submitted to us, so we indulge no assumptions concerning their contents.

1. The excluded telegrams and letter were not admissible under G. S. 1923, § 9887, for that statute, making signed instruments self-authenticating in the absence of the sworn denial of his signature by the apparent subscriber, applies only to writings which are themselves the basis of an action, counterclaim or defense. Mast & Co. v. Matthews, 30 Minn. 441, 16 N. W. 155; Fitzgerald v. English, 73 Minn. 266, 76 N. W. 27. Another preliminary observation is that, their signers having chosen the telegraph as the medium of the correspondence and having so assumed the risk of error in transmission, the messages received at New Orleans, the ones offered, were the original documents for purposes of evidence. Wilson v. M. & N. W. R. Co. 31 Minn. 481, 18 N. W. 291; Magie v. Herman, 50 Minn. 424, 52 N. W. 909, 36 Am. St. 660; Cobb v. Glenn B. and L. Co. 57 W. Va. 49, 49 S. E. 1005, 110 Am. St. 734; 2 Jones, Evidence, (2 ed.) § 804.

Although telegrams and letters are now seldom spurious, the law has never considered it safe to make them generally self-authenticating. There must still be something to show that the message is "not the act of a stranger." Burt v. W. & St. P. R. Co. 31 Minn. 472, 18 N. W. 285, 289. It may be error to admit an unauthenticated telegram. Adams v. Mille Lacs Lbr. Co. 32 Minn. 216, 19 N. W. 735. But the authenticating evidence may be indirect and circumstantial. It may all be without, or part without and part within, the instrument itself. It is conceivable but not probable that it may all be internal, that is, that a writing may be self-authenticating. 4 Wigmore, Ev. (2 ed.) § 2148. The authorship of the one sought to be bound or someone acting legally in his stead must

be shown. It is not enough that the writing on its face purports to be from him. Ikenberry v. New York L. Ins. Co. 134 Minn. 432, 159 N. W. 955.

Modern methods have made of historical rather than practical interest the rule that the authenticity of telegrams "may be shown by proof of the handwriting of some person employed in the telegraph office at the time the telegram was received at the office, or by proof of the handwriting of the sender." 2 Jones, Ev. (2 ed.) § 802. Ordinarily other indicia of authorship must be sought. It is difficult, if not impossible, to formulate a standard of admissibility at once definite and dependable. But it occurs to us that any relevant writing may be admitted when from its contents and other circumstances in evidence it is reasonably inferable that the author is the person sought to be charged or another lawfully acting for him. "Evidence which, if uncontradicted, would satisfy a reasonable mind" is sufficient. 22 C. J. 907. That is the rationale of the rule which admits a reply letter or telegram. It is admitted without independent authentication because of the common course and dependability of mail and telegraph and proof already in that a message was sent to which the one offered purports to be an answer. Annotation, 9 A. L. R. 984, 989; Melby v. D. M. Osborne & Co. 33 Minn. 492, 24 N. W. 253; Halstead v. Minnesota Tribune Co. 147 Minn. 294, 180 N. W. 556.

Upon the preliminary issue of admissibility, any evidence which promises relevancy should be received, at least tentatively, for decision will frequently depend upon many circumstances, some of which if isolatedly considered would seem irrelevant. The modern use of mechanical devices in all correspondence, particularly that by telegraph, must be considered—understandingly. It may be one of those things with respect to which the common law of evidence should demonstrate its ability to adapt its concepts of admissibility to the current and universal practices of business. The need will remain however to bring forward the best evidence which the case sensibly permits. That done, the writing should be admitted if from the evidence there can be drawn the necessary inference of authorship.

Plaintiffs here made the application and accepted the bond. With that much proof, we think the telegram of January 22, referring to the bond of Carlstad Brothers and stating that the senders were "mailing statement and application and copy of contract," was tentatively admissible. Comparison of application and bond with the message plainly justifies, nothing else appearing, the inference that plaintiffs were its authors. The final telegram and letter also seem automatically to connect themselves with the bond, application, and financial statement. The logical propriety of the inference that no one other than plaintiffs, under the circumstances then appearing, was likely to have been the sender of the messages is plain.

2. Sufficiency of foundation is a matter with respect to which trial courts have a broad discretion. McManus v. Nichols-Chisholm Lbr. Co. 109 Minn. 355, 123 N. W. 1080; Halstead v. Minnesota Tribune Co. 147 Minn. 294, 180 N. W. 556. So even though the evidence was admissible, it does not follow that its exclusion was error. There is nothing here to explain the failure to attempt authentication by the testimony of plaintiffs themselves who were in court. The bond was acknowledged to and witnessed by R. T. Lundberg, the same person who seems to have signed the letter of January 27. He was not a witness. Possibly he could not have been called for cross-examination by the defense, so his testimony if untrue might not have been open to impeachment. The rule which would have prevented that has just been said by distinguished authority to have "no shadow of good sense in any of its parts." "The Law of Evidence—Some Proposals for its Reform" XVI. (Yale University Press—1927.) But it could have been contradicted. Selover v. Bryant, 54 Minn. 434, 438, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. 349. "There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied" even "when he is himself the witness." Hill v. West End St. Ry. Co. 158 Mass. 458, 33 N. E. 582.

Here, what seemed easy means of explicit authentication were untouched. If the attempt had been made, evasion on the part of

plaintiffs or Lundberg would have strengthened rather than weakened the inferences from the documents themselves and the preliminary proof of bond and application. Anyway a case would have been presented where the defendant at least had offered all the evidence reasonably possible. That is not so now and we consider that the learned trial judge acted well within the limits of proper discretion in excluding the exhibits. Further preliminary proof must have seemed to him easily available and his disposition to require it may have been due in part to the frank statement of the attitude of plaintiffs. It was that the telegrams were never authorized by them but were sent "from the office of Wheeler & Merritt."

Affirmed.