IN RE ESTATE OF LOUISE FRANK LeBORIUS.
JOHN LeBORIUS v. MERCEDES REYNOLDS AND ANOTHER.[1]

June 20, 1947.

No. 34,430.

---

[1]Reported in 28 N. W. (2d) 157.

204

*Parker & Parker,* for appellant.

*Dorsey, Colman, Barker, Scott & Barber* and *Charles F. Noonan,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from an order denying plaintiff's motion for amended findings or a new trial.

In 1920, and prior thereto, Louise Frank LeBorius was the fee owner of the property involved in this action, consisting of 14 acres, more or less, in Hennepin county. It was her homestead. She resided on the property with her son, John LeBorius, plaintiff herein, a single man. On July 31, 1920, she conveyed the property by warranty deed to her son for a consideration of $6,000. While the deed recites "the receipt whereof is hereby acknowledged," it appears from the record that at the time of the transfer plaintiff paid his mother $1,000 and an additional $1,000 at a later date. On March 7, 1924, and after plaintiff had paid his mother $2,000, he transferred the property back to her by warranty deed for "one dollar ($1.00), and other valuable consideration." His mother paid the $2,000 back to him "shortly after" he executed the deed to her. This deed was recorded in the office of the register of deeds of Hennepin county on March 11, 1924. There were no reservations of any kind in the deed. The next day, March 12, by the execution of a codicil to a will she had made on March 2, 1922, she bequeathed to plaintiff a life estate in the property. Between the time plaintiff received the deed to the property executed July 31, 1920, and the time he executed the deed back to his mother March 7, 1924, they both continued to reside on the premises the same as they had for many years before she deeded the property to him. Between the summer of 1924 and 1927, plaintiff made certain improvements on the property, consisting of a wind-

mill, a barn, and two hog houses, at a total cost of about $6,000. Plaintiff testified that he paid the taxes on the property from 1910 (ten years before he got the deed) until 1929. He continued to live on the premises with his mother until her death on December 15, 1943, and was still there at the date of the commencement of this action. On March 13, 1944, the mother's will was admitted to probate in Hennepin county. *That* will, dated *October 14, 1942,* contained no provision for a life estate to plaintiff in the premises here involved, but it did name him as one of the beneficiaries. It referred to the fact that plaintiff had placed certain barns and buildings on the property—

"with my full consent and approval and on an understanding and agreement with my said son that such buildings belong to him and that he should have a right to remove them at any time that he might see fit. I direct that if such buildings are still on the property at the time of my death, that my executrix and my trustees hereinafter named carry out the terms of that agreement and cooperate with my said son, John LeBorius, in the removal of said barns and buildings, if he desires to do so. In the event such buildings have not been removed at the time the property is sold, and the buildings can be sold as a part of the property at that time, it is my wish and desire that the value of the buildings be appraised and that my executrix or my trustees hereinafter named, pay to my son John such value as so determined by the appraisers."

It also provided that plaintiff should have the right to purchase a small strip of his mother's land in case any part of a barn he had built on his own land adjoining hers should be on her land, and that if he failed to purchase or remove the part of the barn that might be on her premises it was her wish and desire that her executrix or trustees should convey to him without charge "such additional amount of land as will give reasonable ingress and egress to said barn." The will also canceled certain loans made to plaintiff by his mother and provided that plaintiff should receive the income from a trust fund of $15,000 as long as he lived.

Plaintiff brought this action for specific performance of an alleged contract with his mother for a life estate in the premises involved. In his reply brief, he calls the court's attention to the fact that he "has not attempted to prove an oral contract to make a will," but relies on a written executed contract with his mother, as evidenced by his deed to her executed March 7, 1924, and recorded March 11, 1924, and his mother's codicil to her 1922 will, which codicil was dated March 12, 1924, bequeathing a life estate in the premises to plaintiff, with a power of sale. Plaintiff was precluded from testifying as to conversations between him and his mother regarding the transaction, but he offered testimony by George R. Smith, his mother's attorney, who prepared the original will of March 2, 1922, and the codicil dated March 12, 1924. Mr. Smith testified as follows:

"Mrs. LeBorius came to my office and said that she wanted to have a change in that will I had prepared for her in 1922, that her son John had deeded back to her the 12-acre tract south of the Shakopee Road and that she had to give him a life estate in that tract of land, and wanted her will changed so as to carry out that direction."

William Schaleben, a witness for plaintiff, also testified that plaintiff's mother told him in 1927 that she bought the property back from plaintiff and that she agreed to make a will and give plaintiff a life estate in the property, and for that reason she could not sell it unless she made another agreement with plaintiff. He also said: "The conversation was that she had made an agreement to give him a will, and that was the consideration for her buying the farm back from John." N. K. Hunt, another witness for plaintiff, testified that plaintiff's mother told him in 1933 that she could not sell the property because "She had fixed John up a life lease in it at that time." Plaintiff testified that from 1929 until his mother died in 1943 he did not do much work. "On account of the family trouble I quit." He said that he continued to live on the farm with his mother, bought part of the food, and supported himself. There was testimony, which

he denied, that he quarreled with his mother, cursed and threatened her, and used obscene language. He was questioned about letters from his mother to his sister, which he identified, in which his mother complained of his actions and treatment of her, but he denied any mistreatment. He admitted that "At certain times I did drink quite a little. Had so many different troubles out there." He admitted that his mother had him arrested in 1939, but blamed it on the actions of his sister, who testified that she knew of no services plaintiff had performed for his mother since 1929. It will serve no purpose to go into a long review of the bickerings and arguments that apparently took place between plaintiff and his mother. Suffice it to say that it does not appear from the record, especially from 1929 to the time of her death in 1943, that plaintiff was any too considerate or thoughtful of his mother or her welfare, nor did he appear to do very much to assist in the management or upkeep of the farm during that time. Plaintiff's testimony as to his conduct was not very convincing; he was prone to blame most of his shortcomings on someone else. He admitted that he might have threatened his sister, the executrix of his mother's will and one of the parties to this action. He accused her of "Sicking my mother to get after me all the time." A witness for plaintiff testified that he never saw anything out of the way on any visits he made to the farm where plaintiff and his mother resided.

The trial court concluded:

"That plaintiff has failed to prove or establish any valid, legal, or enforceable oral contract and agreement between plaintiff and the deceased Louise Frank LeBorius by the terms of which Louise Frank LeBorius was or became or continued to be obligated to bequeath by will to the plaintiff a life interest in the property hereinabove described; that if at any time the deceased Louise Frank LeBorius orally promised to leave to plaintiff a life estate in said real estate, such promise was without consideration and may not be specifically enforced."

The court denied the relief prayed for by plaintiff and dismissed the action.

Plaintiff contends that the findings of fact are incomplete and do not contain all the pertinent facts, and that the conclusions of law are not warranted or justified by the facts as given by the testimony and exhibits.

A view of the evidence most favorable to the prevailing party must be taken on this appeal. Hanson v. Hall, 202 Minn. 381, 279 N. W. 227, and cases cited. See, also, Leitner v. Pacific Gamble Robinson Co. 223 Minn. 260, 26 N. W. (2d) 228.

■ We shall first consider plaintiff's claim that he relies on a written executed contract with his mother, as evidenced by his deed to her of March 7, 1924, recorded March 11, 1924, and her codicil executed March 12, 1924.

"* * * where it is sought to make out a contract by resorting to two or more separate writings, the connection must appear from the writings themselves, without aid of extrinsic evidence." Halstead v. Minnesota Tribune Co. 147 Minn. 294, 299, 180 N. W. 556, 558.

In the case cited above, it was held that a contract of employment of the plaintiff by defendant was shown by letters and telegrams exchanged between the parties, although the first letter alone, written by plaintiff, stated the terms. The court said that the writings (147 Minn. 299, 180 N. W. 558) "in terms refer the one to the other so that by a mere reading of them the conclusion is unavoidable that those writings, and those alone, constitute the contract of employment."

"The connection and relation of several writings assumed to constitute one contract must appear on their face, either from the nature of their contents or subject-matter, or by reference, and cannot be shown by parol." Tice v. Freeman, 30 Minn. 389, 391, 15 N. W. 674.

In an article entitled *Some Comments on the Section of the Minnesota Statute of Frauds Relating to Contracts,* 14 Minn. L. Rev. 746, it is stated at p. 757:

"As is the general rule [cf. Browne, Statute of Frauds (5 ed.) 470-474, §§ 346b-349], the formalities of the statute are satisfied by

the existence of a number of papers, provided that taken together and without the need of parol evidence to connect them, they make out a complete statement of the transaction."

As stated, the deed here from plaintiff to his mother recorded March 11, 1924, discloses that it is an ordinary warranty deed "for and in consideration of the sum of one dollar ($1.00), and other valuable consideration to him in hand paid," and describes the property. There is no reference whatever therein to indicate that as a part of the consideration the mother was to execute a codicil to her will giving plaintiff a life estate or that anything else was to be done by her. Standing alone, the deed has no reservation of any kind which would indicate that plaintiff, as grantor, expected to receive anything further in the matter from his mother. The same is true with reference to the codicil, dated March 12, 1924, to the 1922 will. It bequeaths to plaintiff, among other things, a life estate in the property—

"with power to dispose of the whole or any part thereof by will to his issue, and with the further power and privilege of selling and disposing of the whole or any part of said real estate at any time that my said son John may deem it for the best interests of himself and my estate. However, should my said son John sell or dispose of said real estate or any part thereof, I bequeath the proceeds derived from the sale of the same to my trustee hereinafter named, to be held by said trustee and administered in the same manner, upon the same terms as in my said will bearing date March 2, 1922. Provided, and in the event that my said son John sells or disposes of the whole or any part of the aforementioned real estate, I direct my said son to turn over and deliver to my said trustee nominated in my said will all the proceeds derived from such sale."

Plaintiff cites Bolles v. Sachs, 37 Minn. 315, 33 N. W. 862, and Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421, as controlling. In the former case, plaintiff and another, as copartners, were engaged in the sale of bottled mineral water and other goods which they had purchased from defendants. On Sep-

tember 26, 1885, plaintiff, on behalf of the copartnership, sold and assigned to defendants by a bill of sale all merchandise, trade fixtures, and accounts for $9,500, the amount of their indebtedness to defendants at the time of the sale. On the same date and, as plaintiff claims, as a part of the same transaction, plaintiff and defendants executed a further written agreement, whereby, for the expressed consideration of an agreement by plaintiff to conduct the business of defendants, the latter agreed, for so long as plaintiff might elect, to employ plaintiff in that business. Defendants further promised by this instrument to pay plaintiff $2,000 out of the first money collected from one of the accounts "this day transferred" to defendants. The action was brought for breach of this contract, in that defendants had not paid the $2,000 specified and had refused to allow plaintiff to conduct their business, so that he lost profits which he would have realized from it. The court held that the two instruments, namely, the bill of sale from plaintiff and his partner to defendants and the agreement for employment between plaintiff and defendants bearing the same date and executed the same day were to be read together as part of an entire agreement, particularly in view of the fact that the contract for employment referred to the accounts "this day transferred" by the bill of sale. It was also admitted by one of the defendants in his testimony that the agreement to pay the $2,000 was a consideration for the bill of sale which embraced the accounts. The court held that this evidence was admissible, notwithstanding the $9,500 consideration clause in the bill of sale, since (37 Minn. 318, 33 N. W. 864) "This does not exclude parol evidence of an additional or other consideration." In that case there was a connection appearing in the documents between the bill of sale and the employment contract which would identify them as being part of the same transaction. Such is not the situation here; in fact, there is nothing appearing on the face of either the deed or the codicil to connect them in such a manner as to constitute a written contract.

In the Odenbreit case, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421, there was no attempt made to prove a written agreement by

two or more separate documents. The plaintiff there claimed that the Utheims had orally agreed to adopt her as their child and leave her their property. Plaintiff remained in the home and rendered services until she was 20 years of age. While there, Mrs. Utheim died, and thereafter her husband remarried and died testate, leaving his property to his second wife. His will was allowed and his estate distributed by the probate court in accordance with the will. There was no appeal from the decree. Plaintiff then began the action for specific performance. Quoting from the syllabus, it was held:

"Where under an oral contract to adopt an infant and to give her a specified portion of the property of her foster parents at their death in consideration of the relinquishment of all parental rights by her natural parents, the child is reared as the child of her foster parents and renders to them all the duties and services of a daughter until she attains her majority, and such foster parents die without having legally adopted her and without making any provision for her by will or otherwise, the property rights provided for in such contract may be enforced in equity; and where the property consists of real estate, or such rights have not been submitted to the probate court for determination, they are not barred by a final decree of the probate court assigning the property to others."

Here, aside from the fact that plaintiff's deed to his mother was executed March 7 and recorded March 11, 1924, and the codicil to her will was made March 12, 1924, there is nothing in either of these documents, except a description of the premises, which connects them with each other by reference or otherwise. While it was held in the Bolles case, 37 Minn. 315, 33 N. W. 862, *supra,* that parol evidence is admissible to show additional or other consideration, the rule is that where it is sought to make out a contract by resorting to two or more separate instruments or writings the connection must appear from the writings themselves, either from the nature of their contents or subject matter or by reference, and cannot be shown by parol. See cases cited *supra.*

We conclude in the case before us that there is nothing appearing on the face of the deed or the codicil, either from the nature of their contents or subject matter or by reference, which connects them with each other in such a manner as to say that reading them together they constitute a written agreement to bequeath a life estate to plaintiff.

This case differs from In re Estate of Holtorf (Stucky v. Harris), 224 Minn. 220, 28 N. W. (2d) 155, where this court held that two instruments executed at the same time, for the same purpose, and in the course of the same transaction were, in the eye of the law, one instrument. In that case, Claus Holtorf, the decedent, executed a note for $3,000 dated April 12, 1938, payable to his daughter, Ella Stucky. On the same day, another instrument executed by him and attached to the note stated: "I have today executed a promissory note in the sum of $3,000, payable to the order of my daughter, Ella Stucky." In the latter instrument he further explained that his daughter had agreed not to attempt to collect the note until after his death; that she had worked for him for some years in helping him to accumulate his property; that he felt he was indebted to her; and that was the reason "I have today given this note." These two instruments, the court said, were so clearly related to each other as to leave no doubt that they represented one transaction. The two instruments in that case are different from the two under consideration in the instant case.

■ Although plaintiff states that he "has not attempted to prove an oral contract to make a will," we believe, in view of the testimony offered, that we must consider that angle of the case.

"A party may obligate himself to make his will in a particular way, or to give specific property to a particular person, so as to bind his estate. But the courts will be strict in looking into the circumstances of such agreements, and require full and satisfactory proof of the fairness and justness of the transaction. Newton v. Newton, 46 Minn. 33, 48 N. W. 450; Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4 [43 L. R. A. 427, 74 A. S. R. 490]. The remedy for

the breach of such a contract depends upon the facts of each particular case. If the contract be an oral one to devise land, and is reasonably certain as to its subject-matter and its stipulations, equity will decree specific performance, if there has been a part performance of such a character as will take a parol agreement to convey land out of the statute of frauds, upon principles which courts of equity recognize and act upon. If the consideration for the contract be labor and services which may be estimated, and their value liquidated in money, so as reasonably to make the promisee whole, specific performance will not be decreed. But where the consideration of the contract is that the promisee shall assume a peculiar and domestic relation to the promisor, and render to him services of such a peculiar character that it is practically impossible to estimate their value by any pecuniary standard, specific performance will be decreed." Stellmacher v. Bruder, 89 Minn. 507, 509, 95 N. W. 324, 325, 99 A. S. R. 609.

In Robertson v. Corcoran, 125 Minn. 118, 120, 145 N. W. 812, 813, the court said:

"It is well settled that a person may by contract bind himself and his estate to give or will his property to certain designated persons at his death. [Citing cases.] It is likewise well settled that, even if such contracts rest in parol, the courts may, in proper cases, enforce specific performance thereof. [Citing cases.]

"But to authorize a court to decree the specific performance of an oral contract to give property by will, the contract must appear reasonable, and be clearly and satisfactorily established; and it must also have been performed, on behalf of the beneficiary, to such extent and in such manner that he cannot be compensated properly in damages."

In Jannetta v. Jannetta, 205 Minn. 266, 269, 270, 285 N. W. 619, 621, 622, the court said:

"A party may bind himself by contract to make a testamentary disposition of his property. The contract must be proved by clear, positive, and convincing evidence. Whether the contract alleged can

be so proved can be determined only after trial. That the contract is oral does not prevent specific performance if the usual conditions relating to specific performance obtain. * * *

* * * * *

"* * * Wills are revocable, but contracts to make wills are irrevocable without the consent of the parties. It is the contract which is enforced in the district court. Mosloski v. Gamble [191 Minn. 170, 253 N. W. 378], *supra;* Doyle v. Fischer, 183 Wis. 599, 198 N. W. 763, and note, 33 A. L. R. 733."

It is clear from the cases cited above that, while a party may contract to bind himself and his estate to convey land even orally under certain circumstances so as to compel specific performance, such a contract must be proved by clear, positive, and convincing evidence. In such cases, courts will require full and satisfactory proof of such a contract and of the fairness of the transaction.

What are the facts in the case before us? Did plaintiff fully and satisfactorily establish a fair and reasonable oral contract, under the circumstances of this particular case, by clear, positive, and convincing evidence? If so, just what was the contract? What were the considerations and conditions? What about possession? The only way such a contract can be determined, according to the holding of Jannetta v. Jannetta, 205 Minn. 269, 285 N. W. 621, *supra,* is by a trial, where the court said, "Whether the contract alleged can be so proved can be determined only after trial." Here, the trial court concluded:

"That plaintiff has failed to prove or establish any valid, legal or enforceable oral contract and agreement between plaintiff and the deceased Louise Frank LeBorius by the terms of which Louise Frank LeBorius was or became or continued to be obligated to bequeath by will to the plaintiff a life interest in the property hereinabove described; * * *."

Under the rule that the trial court's findings will not be disturbed unless they are manifestly and palpably contrary to the evidence (Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. [2d] 362,

166 A. L. R. 435; 1 Dunnell, Dig. & Supp. § 411), we conclude that no oral contract to bequeath real estate was proved by clear, positive, and convincing evidence in the case before us. The trial court had the right to consider and weigh the oral testimony produced by plaintiff, part of which involved the testimony of the attorney for plaintiff's mother regarding matters handled by him 23 years before the time of trial and part of which involved oral testimony of plaintiff's witnesses with reference to isolated conversations with Mrs. LeBorius in 1927 and 1933, many years before the trial. None of this testimony provided the information in a clear, positive, and convincing manner as to what were the terms and conditions of the purported oral contract, if any. There was never a complete relinquishment of possession of the property by plaintiff's mother, and there was nothing in the conduct of plaintiff, according to the record, between 1929 and the time of his mother's death in 1943, that would indicate that he considered that he had any agreement with his mother to bequeath a life estate to him. There is nothing in the record to indicate that he was of any particular aid or comfort to his aging mother between 1929 and 1943, since he apparently left the responsibility of looking after and caring for the property from 1929 on to his mother or to others. The facts of this case cannot be considered similar to those where a child, or children have assumed a peculiar and domestic relation to their parents and rendered services of such a peculiar character, such as personal care, that it would be impossible to estimate their value by any pecuniary standard. In this case, it appears that even after plaintiff, on his own admission, quit work about 1929 and left the responsibility of the management of the place to others during the long years of the depression that followed, he still had a comfortable arrangement, since he was permitted to live with his mother and make her residence his home without apparently contributing anything worth mentioning toward its maintenance. In view of the circumstances, we cannot see where any injustice has been done or will be done plaintiff. The payment he made on the place was returned to him. His mother, in her will, canceled any indebtedness plaintiff owed her and provided

that he could either remove the buildings he had put on the place or should be paid for them at their appraised value at the time of the sale. In addition, her will set up a trust fund for him at $15,000. Considering all the facts, we conclude that plaintiff has been reasonably well provided for through the years, particularly in view of the record, which does not disclose that he overexerted himself by way of reciprocation during some of that time.

Affirmed.