STATE v. EARTHIA WILEY.

205 N. W. 2d 667.

March 16, 1973—No. 43098.

*Daniel R. Shulman,* for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

PER CURIAM.

Defendant, Earthia Wiley, was found guilty by a jury of unlawful possession of marijuana[1] and appeals from the judgment of conviction. Cited as error, among other things, are the claimed inadequacy of the search warrant, the procedures used in the Rasmussen hearing, various evidentiary rulings, and the sufficiency of the evidence. We affirm.

The investigation leading to defendant's arrest for unlawful possession of marijuana was initiated on October 14, 1970, when a Minneapolis housing inspector told the police that he had seen suspected marijuana in a garage located at 4717 Fourth Avenue South in Minneapolis. In response to the housing inspector's report, two members of the Minneapolis Narcotics Squad went to the garage and, looking through a window and open garage doors, observed a large quantity of suspected marijuana and an automobile. It was subsequently determined that the automobile was jointly registered to defendant and a Mrs. Patsy M. Harley, the owner of the house at 4717 Fourth Avenue South.

---

[1] Minn. St. 1969, §§ 618.01, 618.02, and 618.21, subd. 1.

On October 22, 1970, an unnamed informant told members of the narcotics squad that defendant smoked and sold marijuana and that the informant had observed marijuana in the house, the garage, and on defendant's person. He also furnished the police with a sample of marijuana allegedly from a bedroom in the house at 4717 Fourth Avenue South. The police subjected this to a Valtox test, and it showed positive for marijuana.

On the basis of this information, the police obtained a warrant authorizing them to search defendant, his car, the garage, and the house for drugs and "items of identification to show constructive possession of above contraband such as rent receipts, utility bills, personal letters and other personal ID." Pursuant to this warrant, the police, on October 23, 1970, stopped and searched defendant and his automobile at the intersection of Lake Street and Clinton Avenue in Minneapolis. Defendant resisted the search and was arrested for refusal to comply with a court order, but no drugs were found in the car or on his person.

The police then took defendant to 4717 Fouth Avenue South to search the house. When the police arrived, they awakened Mrs. Harley,[2] who was asleep in one of the bedrooms. In a dresser drawer in this bedroom, the police found several containers of marijuana and various items bearing defendant's name, including a selective service card, credit cards, letters, and identification cards. The drawer also contained a paperback book bearing the words on its cover, "Earthia Wiley—don't touch this book—personal and private." Besides the book, the identification items, and the marijuana, the drawer contained only a handkerchief and a man's sock. Additional marijuana was found in other parts of the house and in the garage. After the search and seizure, the police again arrested defendant, this time for possession of marijuana, and gave him Miranda warnings. On

[2] Mrs. Harley was also charged with unlawful possession of marijuana. She pled guilty.

the way downtown to the police station, when asked by an officer where he was the night before, defendant stated he was "out selling reefer" and laughed.

After notice to defendant that the state intended to introduce evidence of statements in the nature of confessions or admissions and evidence obtained by the search and seizure, a Rasmussen hearing was held. The Rasmussen court granted defendant's motion to suppress any verbal statements made by him prior to the Miranda warnings; it denied defendant's motion to suppress statements made after the Miranda warnings; it denied defendant's motion to suppress evidence obtained as a result of the search on October 23, 1970; it found probable cause for the search warrant based on the police officers' corroboration of information received from an infomant; and it denied defendant's motion to require the state to reveal the identity of that informant.

At trial the defense was that, although there was marijuana in the house, it was not under defendant's dominion and control and that, in fact, he did not live at 4717 Fourth Avenue South. Most of defendant's arguments before this court go to the admissibility of evidence used by the state to show defendant's constructive possession of the marijuana, which was the essential element in proving the charge against defendant.

1. Defendant contends that his admission of a possessory interest in the house in which marijuana was found should have been excluded from evidence because the prosecution had not at a pretrial Rasmussen hearing disclosed the admission, State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. 2d 3 (1965), and had not undertaken to show that the admission was made voluntarily, Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966). The contention is unfounded.

Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. ed. 2d 908 (1964), which the rules we established in Rasmussen were designed to effectuate, mandated that at some stage in the criminal trial proceedings the trial court must provide for an in

camera preliminary examination as to the voluntariness of a confession offered by the prosecution, it being the purpose of such hearing to resolve evidentiary conflicts and to reject confessions which the court found to have been involuntarily made.

The voluntariness of this defendant's admission is not as a matter of fact challenged, and the circumstances under which it was made did not make the Miranda rules in any way applicable. The admission was made on October 20—three days before defendant was arrested for the offense of possessing marijuana —in the course of a police response to a reported "domestic argument." Mrs. Harley, a friend of defendant's, had called the police, asking them to evict defendant from the premises. Upon their arrival, defendant told the police officers to leave the premises, stating: "[Y]ou better get out of my house * * * because I pay rent here and I live here, and I didn't call you here."

The familiar rules of Miranda were stated in the specific circumstances of an individual "subjected to custodial police interrogation" and were designed to accord such individual his Fifth Amendment privilege "not to be compelled to incriminate himself." Miranda v. Arizona, 384 U. S. 436, 439, 86 S. Ct. 1602, 1609, 16 L. ed. 2d 694, 704 (1966).[3] Defendant did not assert that he was coerced into making the admission, and any implication that the police compelled defendant to tell them to "get out of my house" would be utterly incredible. He was not in custody, and he was not under police interrogation. There is nothing to suggest that his statement was other than spontaneous or, in the

---

[3] The United States Supreme Court in this narrow context of custodial police interrogation took careful note of the psychological orientation of "incommunicado interrogation of individuals in a police-dominated atmosphere," contrasting it with the atmosphere of moral support of family and friends when interrogation takes place in the suspect's own home. In his own home, as the court recognized, an accused may be "confident, indignant, or recalcitrant" and "is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior." (384 U. S. 445, 449, 450, 86 S. Ct. 1612, 1615, 16 L. ed. 2d 707, 709.)

Miranda sense, the statement of an indignant individual keenly aware of his rights to direct the police officers to leave his home.

2. Defendant objected to the admission of his welfare identification card which was seized at the time of the police search on October 23 but was not listed in the police inventory of items seized and was not disclosed in the pretrial Rasmussen hearing. The defendant was entitled to a determination at the Rasmussen hearing of whether there was a proper seizure of the card. Because he did not have that opportunity, it should not have been admitted into evidence. We are convinced beyond a reasonable doubt, however, that its erroneous introduction into evidence was without prejudice to defendant. The welfare identification card was one of several identification items found in the same dresser drawer in which the marijuana was found. Its value was purely cumulative, supporting no inference other than those amply supported by the other identification items. Moreover, there could be no constitutional objection to the seizure of the welfare card different from those raised to the seizure of other identification items.

3. Defendant also cites as error the admission of his statement that he was "out selling reefer" on the grounds that the Rasmussen hearing court made insufficient findings of fact that the statement was constitutionally obtained by the police. The state's intention to use this statement had been disclosed to defendant and its admissibility litigated in the Rasmussen hearing. However, defendant argues that the judge's ruling that all statements made after the Miranda warnings were admissible did not satisfy the requirements of State ex rel. Rasmussen v. Tahash, *supra,* and Jackson v. Denno, *supra,* for a pretrial ruling on the admissibility of inculpatory statements.

In essence, defendant argues that the court's finding that all statements made after the Miranda warnings were admissible was an insufficient ruling on the admissibility of any particular statement without a specific finding of the time each statement was made; i.e., a ruling as to whether each particular statement

was made before or after the Miranda warnings. Although defendant correctly cites the controlling rule that all issues of fact are to be decided by the Rasmussen court,[4] in this case there was no conflicting testimony introduced at the hearing. The testimony was undisputed that the Miranda warnings were given defendant after his arrest at the house and that defendant's statement that he was "out selling reefer" was made after the arrest while he was being transported downtown. Defendant offered no evidence to the contrary. There simply was no factual dispute for the court to settle. Therefore, the Rasmussen court's fact-findings were sufficient.

4. Defendant's next group of objections go to the validity of the search warrant pursuant to which the marijuana and identification evidence were seized. Defendant challenges the sufficiency of the supporting affidavit and the breadth of the authorized search. The warrant authorized the police to search for and seize "narcotic drugs and dangerous drugs including marijuana, LSD, amphetamines and barbiturates and items of identification to show constructive possession of above contraband such as rent receipts, utility bills, personal letters and other personal ID."

Defendant first argues that there was no showing of probable cause because the police lacked knowledge of the reliability of the informant and made insufficient independent verification of the facts alleged by the informant. We hold the verification was sufficient to establish the informant's reliability. The informant related sufficient details to show his firsthand knowledge. In addition, the police had previously observed marijuana in the garage and had found a car in the garage registered in the names of defendant and Mrs. Harley. This constituted sufficient verification to support the magistrate's issuance of the warrant. Cf. State v. Radil, 288 Minn. 279, 179 N. W. 2d 602 (1970),

---

[4] Doan v. State, 290 Minn. 105, 186 N. W. 2d 518 (1971); State v. Hall, 286 Minn. 424, 176 N. W. 2d 254 (1970); Sims v. Georgia, 385 U. S. 538, 87 S. Ct. 639, 17 L. ed. 2d 593 (1967).

certiorari denied, 401 U. S. 921, 91 S. Ct. 910, 27 L. ed. 2d 825 (1971) ; State v. Purdy, 278 Minn. 133, 153 N. W. 2d 254 (1967).

Defendant next argues that even if the warrant was proper in its authorization to search for drugs, it was defective in its authorization to search for identification items because the affidavit provided no probable cause to believe there were identification items in the house and because the term "identification items" is overbroad and authorized a general search.

Defendant's objection based on probable cause is without merit. A clear inference from the facts related in the affidavit was that defendant resided at the house. Under the familiar rules that affidavits are to be judged in a commonsense fashion,[5] and that each individual allegation need not be spelled out if sufficient information is presented to the magistrate to permit him to conclude that the charges are sufficiently supported to justify issuance of the warrant,[6] we hold the affidavit is sufficient to support the magistrate's issuance of the warrant for identification items. In passing on an application for a warrant, the magistrate is not required to ignore such familiar facts of normal life as the habit of most people to have items of identification at their residence.

Defendant's argument that the search warrant was overbroad as authorizing a general search is supported by citation to cases invalidating searches for writings seized for the communicative value of their content.[7] These decisions are inapplicable to this case because the items were seized solely for identification pur-

---

[5] United States v. Harris, 403 U. S. 573, 91 S. Ct. 2075, 29 L. ed. 2d 723 (1971); State v. Bagley, 286 Minn. 180, 175 N. W. 2d 448 (1970); State v. LaBarre, 292 Minn. 228, 195 N. W. 2d 435 (1972).

[6] State v. Suess, 280 Minn. 308, 159 N. W. 2d 180 (1968); State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. 2d 382 (1966).

[7] See, Stanford v. Texas, 379 U. S. 476, 85 S. Ct. 506, 13 L. ed. 2d 431 (1965), invalidating a warrant authorizing the seizure of writings concerning the Communist Party of Texas; Marcus v. Property Search Warrant, 367 U. S. 717, 81 S. Ct. 1708, 6 L. ed. 2d 1127 (1961), involving a warrant authorizing seizure of obscene publications.

poss without regard for their communicative value. This is precisely the distinction urged by the proposed American Law Institute Model Code of Pre-arraignment Procedures (Proposed Official Draft No. 1 [1972]), § 210.3(2):

"With the exception of handwriting samples, *and other writings or recordings of evidentiary value for reasons other than their testimonial content,* things subject to seizure * * * shall not include personal diaries, letters, or other writings or recordings, made solely for private use or communication to an individual occupying a family, personal or other confidential relation, other than a relation in criminal enterprise * * *." (Italics supplied.)

We feel this issue is controlled by Warden v. Hayden, 387 U. S. 294, 302, 87 S. Ct. 1642, 1648, 18 L. ed. 2d 782, 789 (1967), in which the court overruled the old "mere evidence" rule and discussed the proper distinction to be used in judging whether items are constitutionally subject to search and seizure:

"The items of clothing involved in this case are not 'testimonial' or 'communicative' in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the Fifth Amendment. [Citation omitted.] This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure."

See, also, United States v. Bennett, 409 F. 2d 888 (2 Cir. 1969), certiorari denied, 402 U. S. 984, 91 S. Ct. 1670, 29 L. ed. 2d 149 (1970).

5. Defendant also contends that credit cards and other identification items bearing his name, found near the marijuana, were admitted into evidence without sufficient foundation. Specifically, he argues that the items should not have been admitted until the state provided more evidence of his ownership of the items than merely that his name was printed, typed, or embossed thereon. Except where authorship of documents is in issue, no

specific rules about authenticating chattels have developed, chiefly because the variety of circumstances involved is so great that no specific rules would be suitable. 7 Wigmore, Evidence (3 ed.) § 2129. With respect to sufficiency of foundation, trial courts have broad discretion. Lundgren v. Union Ind. Co. 171 Minn. 122, 213 N. W. 553 (1927); 7 Dunnell, Dig. (3 ed.) § 3363. Here, authentication required evidence sufficient to support a finding that these items belonged to defendant. The possibility that these items (many of them found in a single drawer) with defendant's name printed, typed, or embossed thereon belonged to someone other than defendant is, at best, very remote. Only if someone misrepresented himself as defendant to each issuing entity, could these items not belong to defendant. Thus, the trial court did not abuse his discretion by admitting these items.

6. Defendant's next objections go to the admission of welfare records and testimony of welfare officials which were used to show that defendant had given his address as 4717 Fourth Avenue South. Defendant first argues that the welfare information was privileged. In State v. Lender, 266 Minn. 561, 124 N. W. 2d 355 (1963), we concluded that certain communications made to welfare agencies were not privileged, relying on Minn. St. 595.02(5), which provides that the privilege shall apply to public officers "when the public interest would suffer by the disclosure." Although defendant points out that the Department of Public Welfare has promulgated regulations since Lender which limit the disclosure of welfare information (Department of Public Welfare Reg. No. 45), we think the issue in this case is foreclosed by State ex rel. Trimble v. Hedman, 291 Minn. 442, 192 N. W. 2d 432 (1971). In that case, we upheld the admissibility of a telephone conversation between the relator and a police officer who called her ostensibly to discuss welfare payments where the evidence was used solely as a means of identification and not for the purpose of disclosing relator's welfare status. We similarly uphold the use of the welfare records in the instant case where the evidence does not relate to defendant's welfare status but only to the identification of his residence.

Defendant also argues that testimony by one welfare official as to information contained in a report prepared by another welfare official, although generally admissible under the business records exception to the hearsay rule, is inadmissible in this case as a violation of his Sixth Amendment right to confront the witnesses against him.[8]

Defendant's position is supported by State v. Matousek, 287 Minn. 344, 178 N. W. 2d 604 (1970). The defendant there alleged that the prosecution's introduction of business records violated his constitutional right to confront the witnesses against him. This court specifically noted (287 Minn. 350, 178 N. W. 2d 608) :

"* * * It appears from the various decisions that the admissibility in evidence of business records depends upon the purpose for which they are offered. If they are offered to prove an essential element of the crime or connect the defendant directly to the commission of the crime, then they must be proved through persons having personal knowledge of the element or connection and such persons must be available for cross-examination. If, instead of producing the person who has personal knowledge, the state relies on documents made by such person or recorded testimony, the defendant has been denied his right to confront the witnesses against him. Barber v. Page, 390 U. S. 719, 88 S. Ct. 1318, 20 L. ed. (2d) 255 [1968]; Pointer v. Texas [380 U. S. 400, 85 S. Ct. 1065, 13 L. ed. 2d 923 (1965)] ; State v. Tims, 9 Ohio St. (2d) 136, 224 N. E. (2d) 348 [1967]."[9]

---

[8] The state contends that defendant waived his right to contest the admissibility of the evidence by failing to make a timely objection. This argument is without merit. When the state offered into evidence state's exhibit Z, defendant's attorney objected on the grounds that the entry was not made by anyone in the courtroom and that defendant did not have a right to cross-examination. This is sufficient.

[9] The court in State v. Matousek, 287 Minn. 344, 178 N. W. 2d 604 (1970), concluded, however, that the introduction of several warranty repair orders showing the serial number of the stolen automobile engine merely served to identify the property. They neither connected the defendant directly with the crime, as did the testimony in Pointer,

In the instant case, the prosecution sought to introduce the welfare records to prove "constructive possession" of the marijuana by showing that defendant lived at the address in question. This was an essential element of the crime. The records were introduced at trial through the testimony of a Mr. Collias while one of the records had been prepared by a Miss Murphy and another had been prepared by a former caseworker. No one from the Hennepin County Welfare Department testified from his personal knowledge as to the address defendant gave the welfare department. Therefore, it was error to allow the testimony without affording defendant the opportunity to cross-examine the persons who prepared the reports and had firsthand knowledge of their contents. However, the evidence was purely cumulative. A large amount of evidence was properly admitted on the issue of defendant's residence at the house. Therefore, although erroneously admitted, the error was without prejudice to defendant.

7. At the commencement of the trial, defendant offered to admit that the quantity of seized marijuana was sufficient to support a conviction and to permit an inference of knowledge of the marijuana's presence. On the basis of these admissions, defendant moved that the state be prohibited from introducing the marijuana into evidence because the very large amount of marijuana involved might unduly prejudice the jury. Defendant contends that the trial court erred in admitting the marijuana under these circumstances. Cases may arise where unduly prejudicial evidence, which is without relevance beyond the defendant's judicial admissions, should not be received. See, State v. Billington, 241 Minn. 418, 63 N. W. 2d 387 (1954). This is not such a case. The large quantity of marijuana was relevant to the defense that defendant had been "framed" by one Juan Ricardo. That Ricardo could have "framed" defendant with a much smaller amount of marijuana tended to rebut the defense. We

nor did they prove an element of the crime as the doctor's report did in the Tims case.

conclude that the marijuana was properly received in evidence.

8. After the state rested its case, defendant moved for a dismissal on the ground that the state's evidence failed to establish defendant's constructive possession of the marijuana. Defendant claims error in the denial of that motion. This court has recognized the doctrine of constructive possession of illicit drugs where the defendant has exercised knowing dominion and control over the drugs. State v. LaBarre, 292 Minn. 228, 195 N. W. 2d 435 (1972). A new trial will not be granted for a refusal to dismiss for insufficiency of the evidence when the state rests if all the evidence in at the close of the case would justify a conviction. State v. Priebe, 221 Minn. 318, 22 N. W. 2d 1 (1946). After a careful examination of the entire record, we conclude there was sufficient evidence to support a conviction, at least as to the marijuana found in the drawer. The drawer contained marijuana, items with defendant's name thereon, a man's sock, and a handerchief. There was no evidence that it contained anything belonging to anyone other than defendant. Other evidence indicated that defendant lived or, at the very least, spent much time in the premises. Taken together, this evidence justified the jury in finding that defendant had knowing dominion and control over and, either singly or with others, had immediate and accessible possession of the drawer and its contents. Thus, the motion to dismiss was properly denied.

9. Defendant contends that the trial court's refusal to order disclosure of the search-warrant informant's identity was error. The state's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to police is well established. The privilege is limited, however, by the fundamental requirements of fairness. Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. ed. 2d 639 (1957).[10] No fixed rule

---

[10] Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. ed. 2d 639 (1957), formulated an evidentiary rule concerning disclosure for Federal criminal cases. This court, however, has also recognized limitations on the state's privilege to withhold an informant's identity. E.g., State

with respect to disclosure is justifiable. The public's interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. Id. We have considered all of the circumstances of this case and have concluded that the trial court's refusal to order disclosure was neither contrary to the decisions of this court nor a denial of due process.

10. We have considered the other contentions of defendant alleging improprieties in the county attorney's final argument to the jury and alleging error in failing to accord defendant his right of allocution at the time of sentencing.[11] We find no basis for reversal in either argument.

Affirmed.

MR. JUSTICE TODD took no part in the consideration or decision of this case.

---

v. Radil, 288 Minn. 279, 179 N. W. 2d 602 (1970), certiorari denied, 401 U. S. 921, 91 S. Ct. 910, 27 L. ed. 2d 825 (1971). Further, of course, we must ensure defendant's right to due process under the Fourteenth Amendment. See, McCray v. Illinois, 386 U. S. 300, 87 S. Ct. 1056, 18 L. ed. 2d 62 (1967).

[11] We note that the trial court was not aided by a presentence investigation. Clearly, the better practice in this case would have been to request such an investigation prior to imposing sentence. We recommend that a postsentence investigation be immediately conducted for the use of the Adult Corrections Commission in connection with its duties pursuant to Minn. St. 609.12.