## Commonwealth *v.* Voci, Appellant.

Argued April 25, 1958. Before Jones, C. J., Bell, Musmanno, Arnold, Jones and Cohen, JJ.

406

*Benjamin R. Donolow,* for appellant.

*William C. Storb,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July 1, 1958:

The defendant was convicted in the Court of Quarter Sessions of Lancaster County upon indictment charging him with pool selling and bookmaking in violation of the Act of June 24, 1939, P. L. 872, §607, 18 PS §4607.* After the verdict of guilty, defendant filed motions for a new trial and in arrest of judgment. Following the trial court's refusal of these motions and the imposition of sentence, defendant appealed to the Superior Court where the judgment was affirmed (185 Pa. Superior Ct. 563, 138 A. 2d 232). From that affirmance we allowed the present appeal.

Detective Farkus of the Lancaster City Police placed a wiretap upon the telephone line of the P & J Cafe in that city. For a period of three days, from 12:30 P.M. until approximately 4:00 P.M., the officer intercepted all telephonic communications coming over the tapped wire, taking notes in longhand of what was said and simultaneously recording the conversations by use of a tape recorder. Immediately after each day's session

---

* The statute prohibiting the introduction of evidence secured by wiretap in any court of this Commonwealth was not enacted until July 1957, (Act No. 411, July 16, 1957, 7 Purdon's Pa. Leg. Serv. 1103), subsequent to defendant's trial and conviction, and therefore was not applicable to the present case.

a typewritten transcript was prepared of the conversations recorded on the tape.

Detective Farkus was the chief witness against defendant. He testified that the tape recordings had been played and replayed until he was satisfied that an accurate verbatim transcript of the recordings had been achieved. During the course of his testimony concerning the taking of race horse bets by defendant, the officer had in his possession and occasionally referred to handwritten notes he had taken while listening to the intercepted telephone conversations. The bulk of his testimony, however, was read directly into the record from the transcript made from the tape recordings. Although the tape recorder was placed in evidence by the Commonwealth, it was not played to the jury. The officer testified that he knew the defendant but had not previously heard his voice over a telephone; he was positive in his identification of the voice he had heard accepting bets as that of defendant. Two other police officers identified defendant's voice by listening to the tape recordings although neither had lisitened to the conversations as they had come directly over the wire at the wiretap. One of these latter two witnesses had spoken to defendant on the telephone for a short time about a year before. The defendant did not take the stand and no testimony was offered on his behalf. The sole evidence offered against defendant was that procured by means of the wiretap, but it was sufficient to convince the jury that defendant had in fact accepted race bets as charged in the indictment.

Upon this appeal defendant advances the following arguments which he contends require a reversal of the conviction: (1) that the "best evidence rule" requires that the contents of a recording be proven by the playing of the recording itself and consequently the testimony of Detective Farkus which was read from the

typewritten transcript should have been stricken from the record; (2) that there was no evidence of venue, i.e. that defendant was within Lancaster County at the time he allegedly accepted bets on the telephone and that the Lancaster County Court therefore had no jurisdiction; (3) that the conviction cannot stand because it is based solely upon the unauthorized interception and divulgence of telephone conversations in violation of §605 of the Federal Communications Act of June 19, 1934, 48 Stat. 1103, 47 U.S.C.A. §605.

The Superior Court correctly disposed of the defendant's first two contentions upon the basis of well-settled rules of law. As to the first it held, in substance, that the best evidence of the conversations intercepted by means of the wiretap was the testimony of Detective Farkus who had actually heard the conversations as they had occurred; the typewritten transcript was merely used as a means of refreshing the memory of the witness and its use for this purpose was eminently proper in view of the fact that it was prepared under the witness' direct supervision reasonably contemporaneous with the interception of the conversations and the witness testified that he knew it to be accurate: *Commonwealth v. Roth*, 71 Pa. Superior Ct. 71, 73. See also: *Nestor v. George*, 354 Pa. 19, 46 A. 2d 469; *Edwards v. Gimbel*, 202 Pa. 30, 51 A. 357; *Lardieri v. Lamont*, 172 Pa. Superior Ct. 35. On the question of venue, both the Superior Court and the trial court held that there was sufficient evidence of record to establish that defendant was within Lancaster County at the time he committed the offense. The Superior Court also pointed out that this contention was first raised in defendant's additional reasons for a new trial filed more than five months after the verdict. Under these circumstances reliance was properly placed upon the following statement of this Court in *Common-*

*wealth v. Lawrence,* 282 Pa. 128, 133, 127 A. 465: "In the absence of uncontradicted evidence to the contrary, the conviction is conclusive that the crime was committed where it was charged to have been done in the indictment, for the verdict includes such a finding." This has long been the law in this jurisdiction, at least where the defendant has not substantially placed the question of venue in issue: *Commonwealth v. Mull,* 316 Pa. 424, 175 A. 418; *Commonwealth v. Sloat,* 298 Pa. 10, 147 A. 834; *Commonwealth v. Tarsnane,* 170 Pa. Superior Ct. 265, 85 A. 2d 606. We find no merit in defendant's contention that he made timely objection to venue during the course of an *unrecorded* argument at sidebar in support of his demurrer to the Commonwealth's evidence. It is obvious that defendant made no real attempt to raise the issue of venue in the court below, particularly in view of the fact that he did not even request the court to charge the jury specifically with regard to it, even when invited by the trial judge to point out any deficiencies he felt existed in the charge.

The sole question of any importance raised by the defendant is whether the wiretap evidence upon which his conviction is based should have been ruled inadmissible because it was secured in violation of §605 of the Federal Communications Act of 1934, supra, which prohibits the unauthorized interception and divulgence of telephone conversations. Evidence obtained by wiretapping was specifically held admissible in the courts of this Commonwealth in *Commonwealth v. Chaitt,* 380 Pa. 532, 112 A. 2d 379, where this Court, relying on *Schwartz v. Texas,* 344 U. S. 199, 97 L. Ed. 231, 73 S. Ct. 232, ruled that §605 of the federal act is *not a bar to the admission of such evidence in the course of a criminal prosecution of a state crime in a state court.* Defendant argues, however, that our decision

in the *Chaitt* case should now be reconsidered because of a decision of the United States Supreme Court, *Benanti v. United States,* 355 U. S. 96, 2 L. Ed. 2d 126, 78 S. Ct. 155, which was decided shortly before the Superior Court affirmed his conviction. In that case wiretap evidence secured in violation of §605 was held inadmissible in a criminal proceeding in a federal court even though the wiretap had been maintained by state officials acting in accordance with a state statute which specifically authorized wiretapping. The Court further held that the state statute which authorized wiretapping violated the federal statute. However, the Court did not overrule *Schwartz v. Texas,* supra, upon which this Court relied in the *Chaitt* case. The *Schwartz* case was interpreted as holding that even though wiretapping by state officials violates §605, a state rule of evidence allowing the admission of such evidence in state courts would not be overturned.*

There can be no doubt that the United States Supreme Court, in *Benanti v. United States,* invalidated much of the reasoning used by this Court in reaching its result in the *Chaitt* case. It did not, however, overrule *Schwartz v. Texas,* supra, which is the basic authority for this Court's holding that evidence secured by wiretapping is admissible under our rules of evidence which are not governed by statute. It follows that the Superior Court was correct in ruling that the

---

* The Court stated, 2 L. Ed. 2d, p. 131: "The rationale of [Schwartz v. Texas, supra] is that despite the plain prohibition of §605, due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear indication to that effect. In the instant case we are not dealing with a state rule of evidence. Although state agents committed the wiretap, we are presented with a federal conviction brought about in part by a violation of federal law, in this case in federal court."

testimony of Detective Farkus was admissible upon the authority of *Commonwealth v. Chaitt*, supra, which constitutes binding precedent upon it as it does, in fact, upon us.

In reaching this conclusion we do not concern ourselves with the social, ethical and philosophical problems to which the practice of wiretapping gives rise. We repeat now that which we stated, with emphasis, in *Commonwealth v. Chaitt*, supra, p. 535: "*. . . All that we are called upon to decide is in regard to a rule of evidence, namely, whether testimony which in itself is relevant to the determination of a defendant's guilt or innocence should nevertheless be rejected if it was secured in an allegedly improper manner.*"

Such evidence was clearly admissible at the time of defendant's conviction and, since it disclosed that defendant had accepted some eleven bets in violation of the statute, was sufficient in both nature and quality to support the conviction.

The judgment of the Superior Court is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The only evidence introduced in this case against the defendant, Tony Voci, was conversation obtained by means of wire tapping, and, on it, he was convicted of violating the Act of June 24, 1939, prohibiting pool selling and bookmaking. He appealed to the Superior Court which affirmed the verdict and he then appealed to this Court which has also affirmed the verdict.

Section 605 of the Federal Communications Act provides, inter alia: ". . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . ."

The defendant maintains that under this plainly worded statute, it is illegal and unconstitutional to use in any criminal prosecution evidence obtained by wire tapping. This Court held in the case of *Commonwealth v. Chaitt,* 380 Pa. 532, that the fact evidence is obtained illegally does not bar its use by the prosecution. Accordingly, the lower Court and the Superior Court approved the verdict against Voci on the authority of the *Chaitt* case.

However, Voci submits that the *Chaitt* case is no longer authority because since it was promulgated in 1955 the Supreme Court of the United States decided in 1957, *Benanti v. United States,* 355 U. S. 96, that wire tapping evidence obtained by State officers even in accordance with a State statute may still not be used against the accused in a Federal proceeding.

Does the *Chaitt* precedent, therefore, still apply in Pennsylvania? That is the question before us.

This Court says in its Majority Opinion that: "There can be no doubt that the United States Supreme Court in Benanti v. United States, invalidated much of the reasoning used by this Court in reaching its result in the Chaitt case." If the *Benanti* case invalidated much of the reasoning in *Chaitt,* would that not be enough to invalidate the authority entirely? The Majority does not think so. It says: "It follows that the Superior Court was correct in ruling that the testimony of Detective Farkus was admissible upon the authority of Commonwealth v. Chaitt, supra, which constitutes binding precedent upon it as it does, in fact, upon us."

But is *Chaitt* binding upon us? Are we fettered with chains of our own making? If we are, may we not throw them off at our own bidding? If some of the reasoning in *Chaitt* has now, because of the *Benanti* case, become obsolete, and a fresh approach to the whole

question shows the remainder of the reasoning to be lacking in substance, what force compels us to adhere to what we mentally and morally condemn?

The tapping of a telephone wire is about as nasty an intrusion into one's private affairs as can be imagined. The venerable Justice HOLMES referred to it as a "dirty business." Yet, this Court, with an opportunity to cleanse, fumigate, and purify the law in this respect, insists on retaining wire tapping with all its admitted muck, mire, and malignity on the argument that the Augean stables do not come within our jurisdiction.

The Majority Opinion supports its position by quoting from the Majority Opinion in the *Chaitt* case. I will avail myself of a similar privilege by quoting from my Dissenting Opinion in that case, namely, "The Majority of the Court says that it is not concerned with the question of wire-tapping from 'a purely ethical and social standpoint and by its impairment of the right of privacy.' That may be true, but this Court still has to be concerned with the constitutional rights of the defendant. The Majority says that no constitutional right is involved on the supposition that the protections guaranteed by the Fourth Amendment are only of '*material* things.' What is a material thing? Is liberty non-material? Does liberty become material only when wrapped in chains? If liberty means anything it means the right to deal and converse with one's family, friends and the rest of the human race unimpeded and unhampered by officious eavesdroppers. . . . Which is more important? That a horse race gambler should be punished or that the integrity of one's home be protected? That a placer of bets be stopped or that the government not be degraded by trampling on rights of liberty ever sacred to this land?"

I dissented in the *Chaitt* case, I dissent in this case, and I shall continue to dissent until I can feel assured

414

that when I pick up the telephone to speak to a friend, or to anyone with whom conversation is private and sacred, that some Paul-Pry is not listening in, his malicious meddlesomeness being protected by the Supreme Court of Pennsylvania.