Van Voorhis, J.
In affirming the judgments of conviction of these defendants on gambling indictments, we consider that the intercepted telephone conversations on which these convictions depend are not rendered inadmissible by recent Federal decisions. The other points raised do not require discussion. They have been examined carefully and resolved in favor of respondent.
In many criminal prosecutions evidence obtained by wire tapping authorized by orders granted under the New York State Constitution (art. I, § 12) and Code of Criminal Procedure (§ 813-a) has been introduced in criminal trials in New York State courts. In 1928 the United States Supreme Court held that the tapping of telephone wires is not in violation of the Fourth Amendment protecting against unreasonable searches and seizures (Olmstead v. United States, 277 U. S. 438, 465). In the opinion it was said: “ Congress may of course protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence in federal criminal trials, by direct legislation, and thus depart from the common law of evidence. But the courts may not adopt such a policy by attributing an enlarged and unusual meaning to the Fourth Amendment.”
Six years later, in June, 1934, section 605 of the Federal Communications Act was enacted in response to this suggestion. Section 605 was held to render wire-tap evidence inadmissible in the Federal courts in Nardone v. United States (302 U. S. 379) but to permit their introduction into evidence in trials in State courts (Schwartz v. Texas, 344 U. S. 199). That was the condition of the law when the United States Supreme Court was called upon in 1957 to decide Benanti v. United States (355 U. S. 96) which reaffirmed the doctrines enunciated in both Nardone v. United States and Schwartz v. Texas. The opinion in Benanti, by Chief Justice Warren (p. 101), says concerning Schwarts:
*354 £ £ The rationale of that case is that despite the plain prohibition of Section 605 [Federal Communications Act], due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear indication to that effect.” The Schwartz case was a wiretapping-case. The Supreme Court indicated in it that section 605 of the Federal Communications Act is violated by the procedure for obtaining wire taps prescribed by the New York Constitution and statutes, but made clear that such violations of this Federal statute are not sufficient to justify preventing the States from receiving such evidence in trials in State courts. The Federal statute itself contains no language forbidding the admission of such evidence in any courts. Benanti, Nardone and Schwartz held the means of obtaining such evidence to be illegal, but ruled that it was a question of policy of the forum whether the enforcement of section 605 of the Federal Communications Act should be implemented by imposing an exclusionary rule. Wire taps, it should be repeated, do not infringe constitutional immunity against unreasonable searches and seizures (Olmstead v. United States, supra). Exclusion of such testimony was ordained in the United States courts as a policy measure to aid in the enforcement of section 605.
A contrary policy has been adopted in New York State (People v. Variano, 5 N Y 2d 391; People v. Dinan, 7 A D 2d 119, 6 N Y 2d 715), pursuant to the power reserved in the States by Schwartz v. Texas (supra).
Appellants argue that the decision in Mapp v. Ohio (367 U. S. 643), in 1961, deprived the States of the power reserved to them in Schwartz v. Texas (supra) to give effect to their own public policies in this regard. It is said that Mapp v. Ohio overruled Schwartz v. Texas by reading the exclusionary rule into section 605 of the Federal Communications Act, as, by analogy, it was read by Mapp into the Fourth Amendment, which was held to have been mandated on the States (in this respect) by the Fourteenth Amendment to the Constitution of the United States.
The identical result does not necessarily follow in case of divulging telephone conversations in violation of section 605 of the Federal Communications Act, inasmuch as a statute may not possess the sanction of a constitutional inhibition pro *355 tecting against fundamental rights granting immunity from unreasonable search and seizure.
There is an indication that the Supreme Court of the United States adopted this distinction in deciding Pugach v. Dollinger (365 U. S. 458) in 1961, several months prior to deciding Mapp v. Ohio {supra). The determination of the Federal Court of Appeals in the Second Circuit (277 F. 2d 739) was affirmed by the Supreme Court in a memorandum decision citing Schwartz v. Texas (344 U. S. 199, supra) and Stefanelli v. Minard (342 U. S. 117). The Pugach case involved a Federal injunction sought against proceedings in a State court, to be sure, and Stefanelli v. Minaret held that the Federal courts would not ordinarily restrain the State courts from receiving illegally obtained evidence in advance of trial. Pugach could have been decided exclusively on that theory, as Justice Brennan pointed out in his concurring memorandum by voting to affirm on the authority of Stefanelli alone. But in the face of that the majority affirmed both on that theory and on the rationale of Schwartz v. Texas. We thus have a clear and authoritative decision by the Supreme Court, on the eve of Mapp v. Ohio, reaffirming the Schwarts doctrine that State-obtained wire taps may be admitted into evidence in criminal trials in State courts notwithstanding section 605 of the Federal Communications Act. Is it, then, to be assumed, that the Supreme Court in Mapp meant to overrule Pugach without citing it insofar as Pugach reaffirmed Schwarts, or was the intention of the Supreme Court in deciding Mapp v. Ohio to limit its application to situations where evidence has been obtained unconstitutionally by unreasonable search and seizure (which wire taps are not) without intending to render inadmissible in State courts all illegally obtained evidence where the Constitution has not been violated but only a Federal statute or rule? So, at least, the Second Circuit seems to have thought in Williams v. Ball (294 F. 2d 94, 96) where that court stated: “ We do not read Mapp v. Ohio, 1961, 367 U. S. 643, * * * as overruling sub silentio Schwartz v. Texas — on which six Justices had expressly relied, only four months earlier, in the per curiam affirmance, 1961, 365 U. S. 458, * * * of our decision in Pugach v. Dollinger, 2 Cir., 1960, 277 F. 2d 739.”
It needs to be borne in mind that nothing in the Fourth Amendment or section 605 of the Federal Communications Act expressly *356 renders any evidence inadmissible. The exclusionary rule of Weeks v. United States (232 U. S. 383) was adopted for the Federal courts not because it was thought at the time that the Fourth Amendment required it, but for the reason that the Supreme Court considered it to be the most effective means of enforcing the constitutional prohibition against unreasonable search and seizure. This was recognized in Wolf v. Colorado (338 U. S. 25) as the basis for allowing the State courts to receive unconstitutionally obtained evidence. Neither does section 605 of the Federal Communications Act contain language precluding evidence obtained in violation thereof. For reasons of high governmental policy, the exclusionary rule has been deemed in Mapp to be binding on the States to aid in the enforcement of the fundamental law. Pugach indicates that the same sanction may not be applied to the enforcement of a Federal statute or rule (cf. Williams v. Ball, supra; Bolger v. Cleary, 293 F. 2d 368). Unless and until the Supreme Court decides otherwise we shall follow our prior decisions in People v. Variano (supra); People v. Dinan (supra), and the Federal Court of Appeals in the Second Circuit in Williams v. Ball (supra).*

 Nardone and Benanti were decided as a matter of Federal policy rather than directly in pursuance of the command of the statute. Not without significance is the analogy with McNabb v. United States (318 U. S. 332) and Mallory v. United States (354 U. S. 449), where it was held — without basing the ruling on the Constitution — that confessions were inadmissible in Federal court if obtained during an interval while a defendant was being held without prompt arraignment. Since this rule was not based on any constitutional mandate, it was held not to constrain the State courts (Gallegos v. Nebraska, 342 U. S. 55). Of course the confession would be inadmissible in the State courts if it were coerced in violation of the constitutional inhibition arising from due process of law.