Aaron Guy SELMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. 548.

Supreme Court of Alaska.

Feb. 25, 1966.

James K. Tallman, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, Dorothy Awes Haaland, Asst. Atty. Gen., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

An indictment was returned against appellant charging him with thirteen separate offenses.[1] After trial by jury he was found guilty of the crime of making a fraudulent application for a certificate of title to a motor vehicle[2] and of one of the larceny by check counts.[3] Appellant was thereafter sentenced to two years' imprisonment and ordered to pay a $2,000.00 fine on the fraudulent application for title count and was sentenced to a consecutive six months' imprisonment on the larceny by check count.

In appealing from the judgment and commitment entered below appellant urges.

1. The indictment contained seven forgery counts, three larceny by check counts, one obtaining money by false pretenses count, a false application for certificate of title count, and a single count of false evidence of title. The jury returned not guilty verdicts as to seven of the counts and the trial court dismissed four other counts.

2. As to the fraudulent application for certificate of title charge, Count II of the indictment charged:

That on or about the first day of March, 1964, in the Third Judicial District, State of Alaska, the defendant, AARON GUY SELMAN, wilfully, unlawfully, feloniously and fraudulently did use a false and fictitious name, to-wit, George D. Jennings, in an application for a certificate of title for a motor vehicle, in violation of Section 28.-10.600, Alaska Statutes * * *

AS 28.10.600 provides:

*Fraudulent applications.* A person who fraudulently uses a false or fictitious name in an application for the registration of a vehicle or a certificate of title, * * * is guilty of a felony, and upon conviction is punishable by imprisonment for not more than two years, or by a fine of not more than $2,000, or by both.

3. Count VIII of the indictment, the larceny by check count upon which appellant was convicted, alleged:

That on or about the 20th day of March, 1964, in the Third Judicial District, State of Alaska, the defendant, AARON GUY SELMAN, did wilfully, unlawfully, feloniously and with intent to defraud did utter and deliver to Barrett & Lesh a check or a draft in tenor and purport as follows:

89–28
-----
1252

Anchorage, Alaska 3–20 1964 NO. _____

PAY TO THE
ORDER OF    BARRETT AND LESH        $15 65/100
Fifteen & 65/100 _____DOLLARS
          Eastchester Branch
THE FIRST NATIONAL BANK
          of Anchorage                    /s/   George D. Jennings
                                          -----------------------
                                          2705—31st Spen.

Knowing at the time of said uttering and delivery that he did not have sufficient funds or credit with the First National Bank of Anchorage to meet the check or draft in full upon its presentation, in violation of Section 11.20.230, Alaska Statutes * * *.

AS 11.20.230 provides as follows:

Drawing of check with insufficient funds. A person who, with intent to defraud, makes, draws, utters or delivers to another person a check or draft on a bank or other depository for the payment of money, knowing at the time of the drawing or delivery that he does not have sufficient funds or credit with the bank or depository to meet the check or draft in full upon its presentation is guilty of larceny.

that the trial court erred in refusing to admit into evidence a document purporting to be a power of attorney running from George D. Jennings to appellant.

We are of the opinion that the trial court, under the circumstances of this case, erroneously excluded the power of attorney in question. Since the power of attorney was crucial to appellant's defense to the two counts in question, we are of the further opinion that the trial court's refusal to admit the power of attorney into evidence was prejudicial error.

The crux of the fraudulent application for a certificate of title offense charged in Count II of the indictment is that appellant

> * * * wilfully * * * feloniously and fraudulently did use a false and fictitious name, to-wit, George D. Jennings, in an application for a certificate of title for a motor vehicle, * * * *4

During the course of his testimony, appellant related the circumstances under which he had first met George Jennings; the role that Jennings played in the making of the application for certificate of title; and the giving to him by Jennings of the subject power of attorney. Subsequent to this testimony appellant was asked by his counsel if he could identify the document in question.5 At this point the following transpired in the presence of the jury:

A  Yes, sir.  This is the general power of attorney given me by Mr. Jennings.

Q  And do you recognize the signature on that?

A  I do, yes.

Q  Whose signature is it?

A  George D. Jennings.

MR. TALLMAN: We offer it in evidence.

> *     *     *     *     *     *

MR. McGRATH: I'll object at this time, Your Honor.  I believe that a foundation has not been laid.  This power of attorney is afforded [sic] the witness by two individuals here in

---

4. Supra note 2.

5. The proffered power of attorney reads:

### General Power of Attorney

Know all men by these presents:

That I, the undersighned, [sic] George D. Jennings, have this day made, constituted and apointed, [sic] and by these presents do make, constitute and appoint Aaron Guy Selman, of Anchorage Alaska, my true and lawful attorney-in-fact, for me and in my name, and for my use and benefit, to do and perform all and every act and thing, as fully to all intents and purposes as I might or could do if personaly [sic] present. Including the signing of checks, instituting of law suits, conveyance of land, with full power of substitution and revocation.

Hereby ratifying and confirming all that my said attorney or his substitute or substitutes shall shall [sic] lawfully do or cause to be done by virtue of these presents.

In witness whereof, I have hereunto set my hand and seal on this 17th day of January, 1964.

/s/  George D. Jennings

Witness to sig.
/s/  W. C. Johnson
1002  30th
Spenard, Alaska
/s/  Andrew H. Windom
1200  L St Apts
Anch.

Anchorage, one in Spenard and one in Anchorage, and I believe a foundation would require, for power of attorney, that they be called and testify as to the authenticity of the signature of George D. Jennings.[6]

THE COURT: Objection sustained.

After the prosecutor had made this initial objection, the following took place:

BY MR. TALLMAN:

Q This instrument is entitled 'Power of Attorney' or 'General Power of Attorney', I believe. Did you rely on that instrument?

MR. McGRATH: I'm going to object to this. He's testifying to a document not in issue.

THE COURT: Sustained.

BY MR. TALLMAN:

Q I believe, Mr. Selman, that you've indicated that you have signed some checks under the name of George Selman, is that correct?

A George D. Jennings, yes.

Q George D. Jennings, excuse me. What—upon what were you relying, if anything, when you used that name?

A This power of attorney.

Q Now, I offer it in evidence, Your Honor.

THE COURT: Is there any objection?

MR. McGRATH: Yes, Your Honor, there is. The witnesses are subscribed there for one purpose, namely, to authenticate the signature of the person purportingly executing it—

*   *   *   *   *

MR. McGRATH: * * * and this man can't get up and authenticate his own power of attorney, or else it would be a meaningless function.

MR. TALLMAN: The Court records are down in the Clerk's office, and they'll indicate whether or not subpoenas were issued to attempt to obtain these witnesses.

THE COURT: Objection sustained. You may proceed.[7]

What happened at the trial in regard to the power of attorney becomes even more significant in light of the court's subsequent instructions to the jury regarding the elements of intent in relation to the two offenses. As to the fraudulent application for certificate of title charge, the trial court instructed the jury that the following were essential elements of the crime:

(2) That at such time and place the defendant Aaron Guy Selman, did *wilfully, unlawfully, feloniously, and fraudulently use a false and fictitious name,* to-wit: *George D. Jennings,* in an application for certificate of title for a motor vehicle;

6. Before Mr. McGrath lodged this objection, the following occurred during his voir dire examination of appellant:

BY MR. McGRATH: (voir dire)

Q * * * Mr. Selman, you—this general power of attorney marked defendant's B for identification, bears on the signature on the side, here (indicating), W. C. Johnson, with an address in Spenard, and Andrew H. Somebody, L. Street, Anchorage. * * * who are those persons?

A I do not know those persons.

*   *   *   *   *   *

Q Where, supposedly, was this executed?

A Here in—out in Spenard, supposedly. Mr. Jennings took this and signed it, got it witnessed and gave it to me.

7. Again this all took place in the jury's presence. At this juncture appellant's testimony was interrupted to permit the clerk of the superior court to testify in regard to the subpoenas issued to the persons appearing as witnesses to the power of attorney. At the completion of the clerk's testimony, appellant's counsel renewed his offer in regard to identification B and the trial court sustained the state's objection to its admission.

(3) That \* \* \* *said application was not signed with the consent or authority of the said George D. Jennings, if any such person existed.* (Emphasis furnished.)

Although the trial court did not give the jury any specific instruction as to the requisite intent under Count II several of the court's general instructions as to intent were applicable. The jury was told that all of the charges in the indictment required "proof of specific intent before the defendant can be convicted" and that

To establish specific intent the prosecution must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

The jury was instructed that "wilfully" meant that a defendant voluntarily committed the act or acts charged

\* \* \* with knowledge that they were prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith.

The court defined "intent to defraud" as acts

\* \* \* done knowingly with the specific purpose to deceive in order to cause material loss to another or material gain to one's self.

In regard to the offense of larceny by check count as charged in Count VIII the court instructed the jury that they had to find

\* \* \* beyond a reasonable doubt, that at the time the defendant delivered the check to Barrett & Lesh, \* \* \* that he then and there intended to defraud the said Barrett & Lesh as charged in this count. \* \* \*

The court further instructed the jury that the existence of an "intent to defraud" was an essential element of the larceny by check charge. The jury was instructed that "intent to defraud" meant

\* \* \* an intent to deceive another person for the purpose of gaining some material advantage over him or to induce him to part with property or to alter his position to his injury or risk, and to accomplish that purpose by some false statement, false pretense, wrongful concealment or suppression of truth, or by any other artifice or act fitted to deceive.[8]

The power of attorney was particularly relevant to the above mentioned issues pertaining to the state of mind with which appellant committed the acts charged in Counts II and VIII. Whether appellant relied upon the purported power of attorney was probative of whether or not he acted wilfully, knowingly, and with intent to deceive or defraud. In our view the trial court's exclusion of the purported power of attorney manifestly had a detrimental impact upon appellant's position in regard to these issues of intent and upon his defense to the two charges in general.

Appellee now concedes that its original objection to the admissibility of the power of attorney "on the ground that foundation had not been laid since those who witnessed the power of attorney were not called as witnesses" was not well taken. We agree that Civ.R. 43(k) disposes of this initial objection. Civ.R. 43(k) provides:

*Proof of Attested Writing.*

When the execution of an attested writing is in issue, whether or not attestation is a statutory requisite of its effective execution, no attester is a necessary witness even though all attesters are available unless the statute

---

8. The state did not request and the court did not give an instruction couched in the language of AS 11.20.250. This statute provides:

*Evidence of intent to defraud.* The uttering or delivery of a check or draft to another without funds or credit sufficient to meet it is prima facie evidence of intent to defraud.

requiring attestation specifically provides otherwise.

Appellee's present position is that despite the provisions of Civ.R. 43(k) "the person offering the instrument still has the burden of proving its authenticity, which must be done before the document is admitted into evidence [9]."

Dean Wigmore states in his treatise that:

When the execution of a document is *not in issue*, but *only the contents* or the fact of the existence of a document of such a tenor, no authentication is necessary.[10]

■ As we have previously stated, the fact of the existence of a power of attorney or its contents was relevant to appellant's defense as to all issues of intent as to Counts II and VIII. We hold that in regard to the issues of appellant's intent the subject power of attorney was admissible without authentication. See People v. Marsh [11] where the court stated:

It is true that defendants did not offer to authenticate these letters, reports and conversations. This was not significant. The due execution of the proffered testimony was not involved. The issue was, did defendants receive this material, and if so what effect, if any, did it have on their minds. As was said in People v. Adamson, 118 Cal. App.2d 714, 720, 258 P.2d 1020, 1024, referring to a letter offered to show motive or intent: 'The authenticity of the letter would seem to have no bearing on its intended use. Whether it be genuine or a forgery, it was merely offered to show that Mr. Pugh was motivated by it in his actions.'[12]

■ Assuming that appellant was required to authenticate the power of attorney, we are of the opinion that the record demonstrates that appellant sufficiently authenticated the power of attorney.[13] Appellant testified that he recognized the signature on the document as that of George D. Jennings and that it was the power of attorney that had been given to him by Jennings.[14]

Both parties rely upon Dean McCormick's treatise in support of their respective positions on this authentication issue. Dean McCormick, in commenting upon the subject of authentication by direct proof, writes: [15]

A witness is placed on the stand. 'Will you state whether you are acquainted with the handwriting of X.' 'I am.' 'Will you look at this letter

---

9. Appellee also asserts in its brief that:
   While it may be true that the defendant can authenticate it by proof other than testimony of the witnesses to the power of attorney, the judge was correct in sustaining the objection since the defendant did not authenticate, or make an offer of the proof that he could authenticate, this document by any other means.

10. 7 Wigmore, Evidence § 2132, at 574–75 (3d ed. 1940).

11. 58 Cal.2d 732, 26 Cal.Rptr. 300, 305, 376 P.2d 300, 305 (1962).

12. See also Tanner v. State, 259 Ala. 306, 66 So.2d 836–837 (1953); State v. Hamlet, 219 La. 278, 52 So.2d 852, 855 (1951).

13. Under Count II, the power of attorney was also relevant as to the issue of whether or not the application was signed with the consent, or authority, of George D. Jennings. Similarly under Count VIII, the power of attorney was also relevant in regard to the determination of whether or not appellant used any false statement, false pretense, wrongful concealment, suppression of truth or any other artifice or act fitted to deceive.
   As to the issues alluded to in this note the execution of the power of attorney is in issue and therefore authentication is necessary. 7 Wigmore, Evidence op. cit. supra note 10, at 574–75.

14. Appellant also testified that in the past he had received letters from Jennings. Neither Jennings nor the two witnesses to the power of attorney testified at the trial.

15. McCormick, Evidence § 189, at 400 (1954).

(or at the signature) and tell me whether it is in the handwriting of X.' 'It is.' This is part of the familiar routine of authenticating writings. Perhaps the most distinctive rules about this method of authentication are the practical working rules, which have accumulated in centuries of judicial experience, as to what is a sufficient qualification, if the adversary, as he may do, questions the witness's profession of knowledge by cross-examining him on his qualifications at the outset. *The standard is far from pedantic. Thus one who can read may be qualified if he has seen the person write even though only once and long ago.* Or he may qualify if he has seen writings *purporting* to be those of the person in question under circumstances vouching their genuineness. * * * (Emphasis furnished.) [16]

Dean McCormick also stated that

[I]f there developes an actual controversy over genuineness, then the issue should be resolved mainly upon the testimony of handwriting experts and both the legal qualifications and the requirements of good advocacy demand a much more scientific approach.[17]

■ The state relies upon this latter statement of Dean McCormick in support of its contention that "to allow the defendant to authenticate his own power of attorney would make the necessity of a power of attorney meaningless." Contrary to this assertion a witness, or attester, to the exe-

cution of a power of attorney is not a necessary witness. We hold that a person such as appellant, under the circumstances appearing in the record, could authenticate the power of attorney in question.

■ We are in agreement with Dean McCormick's conclusion that

* * * the authenticity of a writing or statement is not a question of the application of a technical rule of evidence. It goes to genuineness and relevance, as the jury can readily understand, and if a prima facie showing is made, the writing or statement comes in, with no opportunity then for evidence in denial. If evidence disputing genuineness is later given, the issue is for the jury.[18]

In regard to those elements of the crimes charged in Counts II and VIII to which we alluded in footnote 13, supra (i. e. authorization or consent under Count II; false statement, pretense or concealment under Count VIII), we are of the opinion that the appellant made at least a prima facie showing as to the authenticity of the power of attorney and, therefore, it was error to preclude its admission.[19] For the reasons above stated we have concluded that appellant is entitled to a new trial on Counts II and VIII.

Although our determination of the power of attorney issue is dispositive of this appeal, we consider it appropriate to briefly discuss one other issue that appellant has raised.[20]

16. See also 3 Wigmore, Evidence §§ 693–708, at 20–38 (3d ed. 1940).

17. McCormick, op. cit. supra note 15, at 401.

18. McCormick, op. cit. supra note 15, at 407.

19. As previously mentioned, we are of the opinion that the power of attorney was admissible without authentication in relation to all issues pertaining to the intent of appellant under Counts II and VIII of the indictment.

20. In addition to the two issues which are discussed in the body of the text, appellant also raised the issue that the state failed to prove that appellant used a false and fictitious name in regard to the charge contained in Count II of the indictment. Appellant's principal contention is that the prosecutor made a judicial admission during final argument that the state had not attempted to prove that George D. Jennings was a false or fictitious name.
We find no merit in this contention. A reading of the remarks of the prosecutor during final argument shows a proper

Appellant argues that the court erred in not dismissing Count II "as the date of the alleged violation of statute was not alleged * * * with definiteness and certainty." Apparently appellant also argues that Count II of the indictment should be dismissed because of a resulting variance between the date alleged and proof adduced as to the time of the commission of the crime.

█ Count II of the indictment charged that the crime was committed "on or about the first day of March, 1964." We hold that an indictment which alleges that an offense was committed on or about a particular date is sufficient and not subject to dismissal.[21]

Pertinent to the variance aspect of appellant's argument is Lelles v. United States,[22] where the court stated:

As a general rule, a difference between the date charged in the indictment and the date shown by the evidence at trial is not fatal to the prosecution.[23]

█ We hold, under the facts and circumstances of this case, that the evidence adduced by the state to the effect that the crime charged in Count II was committed

---

argument of law and fails to disclose any such asserted admission.

Appellant also asserted as error the trial court's allowing appellant to be impeached "by his previous convictions for petty larceny, while appeals were pending from these convictions." The record discloses that the trial court agreed with appellant's contention and instructed the jury to disregard the testimony as to these convictions which were on appeal. In view of these circumstances and the result we have reached as to the power of attorney issue, we find it unnecessary to determine this issue.

21. Rule 7(c) of our Rules of Criminal Procedure provides in part that:

No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matter of form in the indictment, which does not tend to prejudice the substantial rights of the defendant.

Our examination of the indictment and the entire record convinces us that the form of the indictment as to time did not tend to prejudice any substantial right of appellant.

See also United States v. Reisley, 32 F. Supp. 432, 434–435 (D.N.J.1940), where the court stated:

The case of Thompson v. United States, 3 Cir., 283 F. 895, 897, discusses the term 'on or about' as follows: 'The averment that the crime was committed "on or about the 11th day of March" did not limit the commission of the offense or offenses to that precise day. It might have been committed on that very day or at a time near that day. United States v. McKinley et al. (C.C.) 127 F. 168. "The com-

mon understanding of the words 'on or about,' when used in connection with a definite point of time, is that they do not put the time at large, but indicate that it is stated with approximate accuracy." 3 Words and Phrases Judicially Defined, Second Series, 727. Some of the cases hold that the words not only do not indicate a precise time, but the time is so indefinite and uncertain as to render the indictment bad. Morgan v. State, 51 Fla. 76, 40 So. 828, 7 Ann.Cas. 773; United States v. Winslow, Fed.Cas.No.16,742, but the weight of authority is that the allegation that a crime was committed "on or about" a certain date is sufficient, though the precise time is not thereby stated, except in cases in which time is an ingredient of the offense. Such allegation is a formal and not a material matter within the meaning of section 1025 of the Revised Statutes (Comp.St. § 1691 [18 U.S.C.A. § 556]), which provides that no indictment shall be deemed insufficient by reason of any defect in matter of form only.'

22. 241 F.2d 21, 25 (9th Cir.), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957).

23. See also Glasser v. United States, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680, 697 (1941); Ledbetter v. United States, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162, 1164 (1898); Cogdell v. United States, 113 U.S.App.D.C. 219, 307 F.2d 176, 178 (1962), cert. denied, 371 U.S. 957, 83 S.Ct. 515, 9 L.Ed.2d 505 (1963); Butler v. United States, 197 F.2d 561, 562 (10th Cir. 1952); United States v. Reisley, supra note 23, 32 F.Supp. at 435.

on March 11 was properly received under the "on or about March 1" allegation and further hold that such proof did not constitute a fatal variance.[24]

24. See authorities supra note 25. The trial court correctly instructed the jury that

> You will note the indictment charges that the offense was committed 'on or about' a certain date. It is not nec-

The judgment and commitment entered below is reversed and set aside and the cause remanded for a new trial as to Counts II and VIII.

> essary that the proof establish with certainty the exact date of the alleged offense. It is sufficient if the evidence shows beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.