**UNITED STATES of America,
Appellee,**

v.

**Joseph Henry Donat MORIN, Appellant.
No. 440, Docket 29786.**

United States Court of Appeals
Second Circuit.

Argued May 4, 1967.

Decided June 1, 1967.

Francis J. McNamara, Jr., Stamford, Conn. (John F. Spindler, Stamford, Conn., and Sara Spears Hultgreen, Lincolnshire, Ill., of counsel), for appellant.

David Margolis, Asst. U. S. Atty. (Jon O. Newman, U. S. Atty., for the District of Connecticut, Hartford, Conn.), for appellee.

Before WATERMAN, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Morin, along with two other defendants, Sweezey and Kusy, was indicted in the District Court for Connecticut under 18 U.S.C. §§ 2113 and 371, for the armed robbery of the Farmington Avenue Branch of Mechanics Savings Bank in Hartford on September 3, 1964, and for conspiracy to commit the same. All three pleaded not guilty and were tried before Judge Clarie and a jury. Sweezey changed his plea to guilty during the trial, Kusy was acquitted, and Morin was convicted as the proof amply justified. The sole issue raised on appeal concerns the admission of evidence allegedly obtained by a search and seizure violating the Fourth Amendment.

The testimony as to just how the Government came by the evidence is exceedingly sketchy, Morin having made no pretrial motion to suppress under Rule 41 (e). He had fled from Massachusetts in July, 1964, and, under the aliases of Baker and Smith, had shared an apartment in Hartford with Sweezey until the robbery. In early October the Miami, Florida, office of the F. B. I. was informed by the Boston office that a fugitive felon warrant had been issued for the arrest of Morin for "an unlawful flight." Agent Duffin and several other agents then went to a two and a half room apartment in the Cacti Villa Motel where Morin was with a girl, knocked on the door, identified themselves, and in-

formed him of the arrest warrant. When Morin failed to open the door, they broke it down, placed him under arrest, and advised him of his rights. First claiming to be "Hank Baker," one of the aliases he had used in Hartford, Morin later admitted his true name. The agents went into the bedroom, opened the drawer of a nightstand, found a gun and seized it. They also saw a suitcase containing some papers in an open closet where clothes were hanging. Having asked Morin whether the papers and the clothes were his and being informed they were, the agents packed the clothes on top of the papers in the suitcase and departed with him and it. The papers turned out to include receipts for the purchase of a large amount of clothing at Ripley Clothes in New York on September 6, 1964; a coupon booklet from World Travel Plan's New York office containing hotel confirmations for a one week stay in Miami for Mr. and Mrs. Hank D. Baker of Hartford, Connecticut; a clipping from a Hartford newspaper that Sweezey, who had escaped from a Massachusetts prison farm in July, had been recaptured in Boston on September 12 and would be charged with the Hartford bank robbery; a bill of sale dated September 15, 1964, from a Miami automobile dealer to Henry D. Baker relating to a 1957 Buick sold for $408 and paid for in full; an invoice from a North Miami Beach tire dealer dated September 21, 1964, noting payment in cash; and advertisements for Florida, European and around-the-world travel.

As stated above, Morin made no pretrial motion to suppress any of this evidence. At the trial a salesman from Ripley Clothes identified Sweezey and Morin as having purchased $1300 of clothes for cash on September 6 and an employee of the New York office of World Travel Plan identified an invoice for $410.47 covering the round trip of a Mr. and Mrs. H. D. Baker to Miami and a week's stay at a hotel; no objection was made to this testimony as the fruit of an illegal search although it should have been rather plain that the receipts in

Morin's suitcase had led the Government to these sources of evidence. The issue of unlawful search and seizure was raised only in the course of Agent Duffin's testimony and preparatory to the Government's offer of the papers. After some discussion the United States Attorney suggested that the jury be excused so as to avoid prejudice from mention of the warrant for the arrest of Morin as a fugitive. After Duffin had testified as we have indicated, the judge announced he would "overrule the objection." Morin's counsel next asked to be heard before the papers were offered since he believed that the judge had only "overruled the objection about [Duffin's] going into the apartment * * *." The court instructed the United States Attorney to "Offer your full exhibits first, and then the court will rule on it." The prosecutor offered "the bundle of papers that the witness has identified" other than the newspaper clipping, which was only marked for identification. Morin's counsel then expressly stated he had no objection, and the United States Attorney proceeded to describe the other papers to the jury.

What this seems to indicate is that, once the judge had overruled the objection as to illegal entry, the further concern of counsel had been about the clipping and its reference to the escape from the Massachusetts prison, and this disappeared when the prosecutor did not offer the news article. Later there was further colloquy about the clipping between counsel and the judge, and ultimately the United States Attorney told the jury that because certain matters in the clipping might be considered prejudicial, he did not intend to "offer this as a full exhibit, but instead to state, as a stipulation with defense counsel," that the exhibit was an article from the Hartford Courant discussing the robbery but not mentioning Morin which was in the latter's possession when taken into custody in Florida. Morin's counsel agreed to this.

■ While resourceful counsel assigned to represent Morin on appeal

raised interesting questions of the law of search and seizure—which, however, have since lost at least some of their interest as a result of Warden v. Hayden, 386 U.S. 903, 87 S.Ct. 1642, 18 L.Ed.2d 782 (May 29, 1967)—we find it unnecessary to discuss these at length. The only thing searched for and seized at the motel was Morin's gun. A search for this purpose has been universally upheld as a reasonable incident of a lawful arrest, and was peculiarly so in the case of a prison-breaker. See Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Abel, 362 U.S. 217, 236, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Warden v. Hayden, supra. We see nothing unreasonable in the agents' packing the suitcase. This was not an ordinary arrest where there usually are fair grounds to suppose that the suspect will shortly be released on bail; Morin was an escaped convict and, as Agent Duffin correctly said, "We knew he was not coming back to the apartment at that time." Besides Morin made no request that the suitcase and his clothing should be left in the custody of his girl friend, and telephone calls by the agents to Massachusetts and Connecticut might well have led to the issuance of a search warrant if he had.

■ Counsel draws a vivid picture of the F. B. I. rifling the suitcase at their office but there is nothing in the record to support this and consequently no occasion for us to rule on it; all we know is that the agents did not search the suitcase at the motel on October 6, 1964, and that the Government had the papers at the trial in March, 1965. While counsel's supposition may be correct, it well may not be. Apart from other possibilities it seems quite as likely, for example, that the suitcase remained intact and the papers were found when Morin was returned to prison authorities in Massachusetts. We know of no rule forbidding prison officials to examine the effects of persons returned to custody to gain light on the means of escape or the possibility of repetition or requiring them to close their eyes to what they discover, cf. Abel v. United States, supra, 362 U.S. at 239, 80 S.Ct. 683, and Warden v. Hayden now makes irrelevant the evidentiary character of the find. Indeed Stroud v. United States, 251 U.S. 15, 21–22, 40 S.Ct. 50, 64 L.Ed. 103 (1919), and Cline v. United States, 116 F.2d 275 (5 Cir. 1940), would suggest an even broader rule as to prison searches. Morin's failure to move to suppress or to take the stand in a *voir dire* and give his version of how the Government came by the incriminating papers, and his counsel's statements of no objection, could thus have reflected a realization that successful opposition would have been hopeless.

■ In any event the burden of showing unlawful conduct by the Government rested upon Morin, see Nardone v. United States, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Addison v. United States, 317 F.2d 808, 812 (5 Cir. 1963), cert. denied, 376 U.S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605 (1964); and he did not discharge it. Instead the only constitutional objection to the papers by trial counsel was the unsound one as to the propriety of the F. B. I. agents' entering Morin's apartment. Counsel not only did not make any other objections sufficient to preserve points on appeal, see On Lee v. United States, 343 U.S. 747, 749 n. 3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); cf. United States v. Indiviglio, 352 F.2d 276, 279 (2 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); United States v. Gitlitz, 368 F.2d 501, 504 (2 Cir. 1966), cert. den., 386 U.S. 1038, 87 S.Ct. 1492, 18 L.Ed.2d 602 (1967), but, save for a few minor objections as to relevancy, consented to the admission of the papers which is now claimed to call for reversal.

Affirmed.