Harold C. FULLER, Appellant,

v.

STATE of Alaska, Appellee.

No. 751.

Supreme Court of Alaska.

March 1, 1968.

George B. McNabb, Jr., Fairbanks, for appellant.

Douglas B. Baily, Asst. Atty. Gen., Juneau, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

A jury found appellant guilty of the crime of shooting with intent to kill or wound. He has appealed, claiming that the judgment of conviction should be reversed because certain evidence was erroneously admitted and because of the insufficiency of the evidence to support the verdict.

A man named Lester James Brown, also known as Tony Dutra, was the person charged with the actual shooting.[1] The state's theory of appellant's guilt was that he had hired Brown to do the shooting.

Over appellant's objection the state introduced in evidence exhibits P and Q. Exhibit P was a copy of a telegram obtained from the Fairbanks, Alaska office of the Alaska Communications System which was the receiving station, and exhibit Q was a copy of the same telegram obtained from the originating office of Western Union at Spokane, Washington. The telegram was addressed to Toni Durta at the Nordale Hotel at Fairbanks, Alaska[2], and stated as follows:

HI SON. I GOT A CALL FROM NEW YORK AND I MUST BE ON THE EAST COAST MONDAY MORNING FOR AN IMPORTANT MEETING. THIS SHOULD NOT CHANGE YOUR PLANS FOR A NICE VACATION. WHEN YOU RETURN TO TOWN STAY AT TOWN CENTRE MOTEL, FIRST AND LINCOLN. ASK DESK CLERK FOR LETTER FROM YOUR FRIEND LESTER BROWN CONTAINING CAR CLAIM CHECK AND A SMALL BIRTHDAY GIFT. I WILL BE LEAVING SUNDAY BUT WILL CALL YOU AT THIS MOTEL EVERY DAY STARTING MONDAY. I WILL PLACE

---

1. Brown was tried with appellant and convicted of the crime of shooting with intent to kill or wound. He has not appealed.

2. The telegram was signed by Bill Durta. The state's theory of the case was that Bill Durta was in reality the appellant, Harold Fuller.

CALLS AT 7 AM AND 7 PM UNTIL YOU ARRIVE. IF YOU ARE NOT BACK BY WEDNESDAY I WILL CALL NORDALE AS PRE ARRANGED. I FEEL RATHER GOOD THAT MY COMPANY FEELS I AM THIS IMPORTANT. BE CAREFUL AND DO NOT BE CONCERNED ABOUT THIS CHANGE IN PLANS. ACKNOWLEDGE RECEIPT OF THIS COMMUNICATION VIA WIRE.

■ Appellant contends that it was error to admit the telegram in evidence because it had been obtained in violation of section 605 of the Federal Communications Act which, in pertinent part, provides:

No person receiving * * * any interstate * * * communication by wire or radio shall divulge or publish the * * * contents * * * thereof, except through authorized channels of transmission or reception * * * or in response to a subpoena issued by a court of competent jurisdiction * * * .[3]

Although this statute makes no reference to admissibility of evidence, it has been construed "to render inadmissible in a court of the United States communications intercepted and sought to be divulged in violation thereof * * * ."[4] But this does not mean that the statute makes such communications inadmissible in a state court.

In Schwartz v. Texas the United States Supreme Court held that section 605 of the Federal Communications Act "applies only to the exclusion in federal court proceedings of evidence obtained and sought to be divulged in violation thereof; it does not exclude such evidence in state court proceedings."[5] Since the federal statute has no effect on state court proceedings, appellant's contention that the telegram was inadmissible because of the statute has no merit, and it is therefore unnecessary for us to decide whether the telegram was in fact obtained in violation of the federal statute. Other state courts have reached similar results.[6]

Appellant attempts to escape the effect of *Schwartz* by arguing that the doctrine of that case does not apply to federally owned and operated telegraph facilities, such as the Alaska Communications System.[7] There is nothing in the United States Supreme Court decision in *Schwartz* or in the federal act to suggest such a result, and appellant points to no authority which would tend to support this argument.

■ Appellant does not refer to the Alaska statute similar to section 605 of the federal act. AS 11.60.280, like the Federal Communications Act, makes it unlawful for one receiving or transmitting a communication by wire or radio to divulge the communication, except in enumerated in-

---

3. Act of June 19, 1934, c. 652, Title VI, § 605, 48 Stat. 1103, 47 U.S.C.A. § 605 (1962).

4. Schwartz v. State of Texas, 344 U.S. 199, 201, 73 S.Ct. 232, 234, 97 L.Ed. 231, 234 (1952), citing Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L. Ed. 314 (1937).

5. Note 4 supra, at 203, 73 S.Ct. at 235, 97 L.Ed. at 236. The doctrine of this case was reaffirmed in Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961). See also Benanti v. United States, 355 U.S. 96, 101, 78 S.Ct. 155, 2 L.Ed.2d 126, 131 (1957).

6. Griffith v. State, 111 So.2d 282, 284–286 (Fla.App.), cert. denied, 114 So.2d 6 (Fla.1959); Commonwealth v. Brinkley, 362 S.W.2d 494, 496 (Ky.1962); People v. Maranian, 359 Mich. 361, 102 N.W.2d

568, 572–574 (1960); State v. Giardina, 27 N.J. 313, 142 A.2d 609, 610 (1958); People v. Dinan, 11 N.Y.2d 350, 229 N. Y.S.2d 406, 183 N.E.2d 689, 690–691, cert. denied, Dinan v. New York, 371 U.S. 877, 83 S.Ct. 146, 9 L.Ed.2d 115 (1962): People v. Variano, 5 N.Y.2d 391, 185 N.Y.S.2d 1, 157 N.E.2d 857, 858 (1959); Commonwealth v. Chaitt, 380 Pa. 532, 112 A.2d 379, 383, cert. denied, 350 U S. 829, 76 S.Ct. 59, 100 L.Ed. 740 (1955); Commonwealth v. Voci, 185 Pa.Super. 563, 138 A.2d 232, 233, aff'd, 393 Pa. 404, 143 A.2d 652, cert. denied, 358 U.S. 885, 79 S.Ct. 119, 3 L.Ed.2d 113 (1958); State v. Jennen, 58 Wash.2d 171, 361 P.2d 739, 740 (1961).

7. The Alaska Communications System is owned by the United States and operated by the United States Air Force.

stances.[8] Probably this statute was not relied upon by appellant for the reason that it did not become effective until August 1, 1966, which was more than three months after appellant's trial had concluded. The statute does not purport to have retrospective operation, and we have held that when this is the case a statute will be construed to operate prospectively only.[9]

Appellant contends that the court erred in admitting the telegram in evidence "for want of legal foundation." It is apparently appellant's contention that it was not established that appellant had been the author and sender of the telegram involved in this case.

■ Proof of authorship or identity of the sender of a telegram is a prerequisite to its admission into evidence.[10] But it is not required that the proof be direct—the authenticating evidence may be indirect and circumstantial.[11]

■ The district manager of Western Union at Spokane, Washington testified that the telegram involved was sent from Spokane on August 20, 1965. He also said that the telegram message came into the office by telephone. The auditor at the Ridpath Hotel in Spokane first testified as to the registration and billing procedure at the hotel, which included signing a registration card. The state then introduced in evidence a registration card for the Ridpath Hotel for Room 807, signed by Harold C. Fuller, showing a check-in date of August 17, 1965 and a sign-out date of August 22, 1965. On the ledger card for Room 807 during this period was recorded an $18.71 charge for a telegram sent on August 20, 1965, which charge had been paid. The auditor at the Ridpath Hotel explained that the telegraph office calls the hotel when a telegram is sent and the hotel then posts the charge for the telegram to the guest's account. The telegram involved here was signed by Bill Durta, Room 807, Ridpath Hotel, Spokane, Washington. Juanita Fuller, appellant's former wife, identified the signature on the registration card as that of appellant, Harold C. Fuller.

In summary, the foregoing evidence shows that a telegram was sent and paid for by the occupant of Room 807, Ridpath Hotel, Spokane, Washington, on August 20, 1965, that a telegram sent from Spokane, Washington to Tony Durta in Fairbanks, Alaska on August 20, 1965 was purportedly sent by a Bill Durta, Room 807, Ridpath Hotel, Spokane, Washington, and that the

8. AS 11.60.280 provides in part:
  (a) It is unlawful for a person who receives or assists in receiving, or who transmits or assists in transmitting a communication by wire or radio to divulge or publish the existence, contents, substance, purport, effect, or meaning of the communication, except through authorized channels of transmission or reception to
    (1) the addressee, his agent, or attorney;
    (2) a person employed or authorized to forward a communication to its destination;
    (3) proper accounting or distributing officers of the various communicating centers over which the communication may be passed;
    (4) the master of a ship under whom he is serving;
    (5) another on demand of lawful authority; or
    (6) in response to a subpoena issued by a court of competent jurisdiction.

9. Watts v. Seward School Bd., 421 P.2d 586, 602–603 (Alaska 1966), reh. denied, 423 P.2d 678 (Alaska 1967), appeal pending; Stephens v. Rogers Constr. Co., 411 P.2d 205, 208 (Alaska 1966); Hill v. Moe, 367 P.2d 739, 742 (Alaska 1961), cert. denied, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962). AS 01.10.090 provides: "No statute is retrospective unless expressly declared therein."

10. Harlow v. Commonwealth, 204 Va. 385, 131 S.E.2d 293, 296, 5 A.L.R.3d 1012, 1016–1017 (1963); Annot., 5 A.L.R.3d 1018 (1966).

11. Ford v. United States, 10 F.2d 339, 350 (9th Cir. 1926), aff'd, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927); Lundgren v. Union Indem. Co., 171 Minn. 122, 213 N.W. 553, 554–555, 52 A.L.R. 580 (1927); Ridings v. State, 108 Neb. 804, 189 N.W. 372, 373 (1922).

occupant of Room 807 of the Ridpath Hotel on that date was in reality the appellant, Harold C. Fuller. From this evidence reasonable minds could infer that appellant was the author and sender of the telegram involved in this case.[12] There was a prima facie showing to that effect which was sufficient to justify admitting the telegram into evidence.[13]

Appellant argues that the trial court erred in not granting appellant's motion for a judgment of acquittal. He contends that there was insufficient evidence of guilt to allow the question of guilt or innocence to go to the jury for determination.

As to such contention we said quite recently in Gargan v. State [14] :

> When presented with a specification of error of this nature, this court will consider "only those facts in the record most favorable to the state and such reasonable inferences as the jury may have drawn from them. * * *" The record is reviewed in this light in order to ascertain whether "fair minded men in the exercise of reasonable judgment could have differed on the question of whether guilt had been established beyond a reasonable doubt."

If such fair-minded men could have so differed, then the question of guilt or innocence is properly one for the jury to determine.[15]

The state's theory of the case was that appellant had hired Lester Brown, also known as Tony Dutra, to kill Mike Gutman. There was evidence of motive. Juanita Fuller, appellant's former wife, testified that in November 1963, after she had divorced appellant, the latter came to Gutman's house in an angry state and fought and scuffled with Gutman. She said that appellant threatened that he would see Gutman dead within six months. Such a threat was verified by the testimony of Gutman.

There was evidence that Lester Brown, also known as Tony Dutra, did the actual shooting. Several different threads of evidence tied appellant to Brown. There was testimony that Brown received a telegram sometime in August 1965 while in Fairbanks, Alaska. We have already discussed the evidence from which it could be inferred that appellant had sent a telegram to Brown, using the name Tony Dutra, on August 20, 1965, giving him explicit directions as to things he was to do when he left Fairbanks for Spokane. There was evidence showing that following the shooting Brown did leave Fairbanks, that he went to Spokane, and that he followed the directions given to him by appellant in the telegram. There was testimony that Brown had held himself out to be a private investigator and that he was in Fairbanks "to shoot a man." There was no evidence that Brown had known Gutman and had any reason personal to himself to shoot Gutman. Juanita Fuller testified that Brown had contacted her while in Fairbanks and told her he knew appellant. There was evidence that appellant wrote a letter to Juanita Fuller in October 1965 in which he stated that he had made the mistake of hiring Lester Brown to look into the welfare of his children.

From this evidence we believe that fair-minded men in the exercise of reasonable judgment could have differed on the question of whether it had been established beyond a reasonable doubt that appellant had hired Lester Brown to go to Fairbanks to shoot Gutman, and thus carry out appellant's threat that he would see Gutman dead. The case was properly submitted to the

12. Lundgren v. Union Indem. Co., note 11, supra, 213 N.W. at 554–555.

13. Selman v. State, 411 P.2d 217, 223 (Alaska 1966).

14. 436 P.2d 968 (Alaska 1968).

15. Battese v. State, 425 P.2d 606, 610 (Alaska 1967); Maze v. State, 425 P.2d 235, 239 (Alaska 1967); Allen v. State, 420 P.2d 465, 467–468 (Alaska 1966); Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

jury. It was not error to deny appellant's motion for a judgment of acquittal.

The judgment is affirmed.

RABINOWITZ, Justice (concurring).

In my opinion the initial burden of proving a violation of section 605 of the Federal Communications Act was upon appellant.[1] Study of the trial record reveals that ap-

pellant did not meet this burden. I, therefore, concur in the result reached by this court concerning the superior court's admission into evidence of the telegram.[2] In light of this conclusion, I find it unnecessary to decide whether, as a matter of policy, our courts should countenance a violation of section 605 in any court proceeding.[3]

1. Compare Nardone v. United States, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L. Ed. 307, 312 (1939); United States v. Morin, 378 F.2d 472, 475 (2d Cir. 1967); United States v. Agueci, 310 F.2d 817, 834, 99 A.L.R.2d 478 (2d Cir. 1962), cert. denied Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Coplon, 185 F.2d 629, 636, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S. Ct. 362, 96 L.Ed. 688 (1952).

2. I also concur in the court's disposition of the foundation issue in regard to the admissibility of the telegram and in the decision reached concerning the judgment of acquittal issue.

3. See State v. Giardina, 27 N.J. 313, 142 A.2d 609, 610 (1958); People v. Dinan, 11 N.Y.2d 350, 229 N.Y.S.2d 406, 182 N.E.2d 689, 691–692 (1962).